W. P. L. MUIR, Administrator, Appellant, v. M. J. MILLER, *et al.*

**Fraudulent Conveyance.** The defendant, being indebted to his wife for various loans made to him, evidenced by his two notes, transferred to her the note of a third party for a similar amount, in consideration of the cancellation of his notes. *Held*, to be a valuable consideration, and not in fraud of creditors.

HUSBAND AND WIFE. A wife has a right to secure the payment of her just claim against her husband, however much it may hinder or delay the collection of other claims.

SAME. Where the testimony in regard to loans by a wife to her husband is direct, reasonable and positive, and free from contradiction, all presumptions of fraud that may arise from their relation of husband and wife will be overcome.

DISCONNECTED TRANSFERS. A note given by a husband to his wife for a good and sufficient consideration, is not void as to the husband's creditors because another note was given by him to her without consideration, in an entirely distinct transaction.

*Appeal from Van Buren District Court.*—HON. M. A. ROBERTS, Judge.

MONDAY, OCTOBER 11, 1897.

GARNISHMENT proceedings, commenced as at law, and subsequently transferred to the equity docket. There was a hearing on the merits, and a decree, from which the plaintiff appeals.—*Affirmed.*

*Wherry & Walker* for appellant.

*Mitchell & Sloan* for appellees.

ROBINSON, J. — In October, 1888, the plaintiff, as administrator of the estate of S. J. Miller, deceased, recovered in the Van Buren district court judgment against the defendant M. J. Miller for the sum of two thousand, two hundred and twenty-seven dollars and twelve cents, with interest and costs. In July, 1891, a general execution was issued on the judgment, and the defendant Ellen L. Miller was garnished as a supposed debtor of the defendant M. J. Miller, and her answers were taken by a commissioner appointed by the court. The answers thus taken showed that M. J. Miller was the husband of the garnishee, and that she held and claimed to own a note made to her by one Thomas McAllister on the seventeenth day of January, 1888, for the sum of two thousand dollars, with interest thereon at the rate of eight per cent. per annum, on which

interest for three years had been paid. That note was given in lieu of one which had been made by McAllister, to S. J. Miller, the plaintiff's intestate, and which the garnishee claims was transferred by him to her husband. The answers of the garnishee further state that her husband surrendered that note, and caused the note she holds to be made for it, in part payment of a note which he was owing to her. To the answers of the garnishee the plaintiff filed a pleading in which he alleged that the surrender of the original McAllister note, and the taking of a new one in lieu thereof, payable to the garnishee, was fraudulent, and for the purpose of aiding M. J. Miller to cheat and defraud his creditors, and that he is insolvent. To that pleading the garnishee filed a reply, in which she asserted that she was the absolute owner of the McAllister note, and denied the plaintiff's allegations of fraud. The reply further pleaded an adjudication of the ownership of the note in her favor by the circuit court of Scotland county, in the state of Missouri. When the pleadings had been filed, the cause was transferred to the equity docket, as already stated. The district court found and adjudged that the plea of former adjudication was not sustained, that the transfer to the garnishee by her husband of a note made by one Fatherson was not for a valuable consideration, and in good faith, but that the transfer of the McAllister note was valid and invested the garnishee with the ownership thereof. Judgment for the amount of the Fatherson note and one-half the costs was rendered against the garnishee in favor of the plaintiff. Since the garnishee does not appeal, it is not necessary to review the action of the district court so far as it related to the Fatherson note.

I.   In the year 1885, S. J. Miller, the father of the defendant M. J. Miller, died intestate, and the plaintiff was appointed and qualified as administrator of his

estate. Soon after the appointment of the plaintiff as stated, he commenced this action against M. J. Miller, claiming that in October, 1884, the decedent was feeble in body and mind, and incapable of transacting business of any importance, especially that of dividing or giving away his property; that in the month specified, and while the decedent was in the condition stated, M. J. Miller, by taking advantage of that condition, wrongfully obtained from the decedent, through persuasion and undue influence, money, promissory notes, mortgages, accounts, and securities of the aggregate value of six thousand, four hundred and thirty-nine dollars and fifty cents. Judgment for the possession of the property, or, if it could not be found, for its value, was demanded. The cause was tried to a jury in the year 1886, and a verdict for seven thousand, two hundred and twenty-two dollars and twenty-five cents was returned in favor of the plaintiff. All in excess of one thousand, eight hundred and forty-six dollars and forty-seven cents was remitted, and judgment for that amount, but not for the return of the property, was rendered in favor of the plaintiff. That judgment was reversed by this court on appeal (see 72 Iowa, 585), and in the year 1888 the case was again tried in the district court, and the result was a verdict and judgment in favor of the plaintiff for the sum of two thousand, two hundred and twenty-seven dollars and twelve cents, with interest and costs. It was an ordinary judgment for the recovery of money only, not authorizing the recovery of the property in dispute, and was affirmed by this court in the year 1891. See 82 Iowa, 700. Execution was issued on that judgment, and Ellen L. Miller was garnished thereunder, and that garnishment is the basis of the proceedings which we are asked to review.

It will be observed that the form of the judgment rendered in favor of the plaintiff precludes him from

claiming title to the McAllister note as the property of the estate of which he is administrator. He relies upon the claim that the note in controversy was the property of M. J. Miller, but was transferred to his wife fraudulently, for the purpose of placing it beyond the reach of his creditors. The garnishee testifies, in support of her claim, that the note was given to her in payment of an indebtedness due to her from her husband; that in the latter part of the year 1878 she loaned to him four hundred dollars, which she had earned by teaching and other work, for which he gave her his note about October 15, 1878, and that about the fifth day of April, 1882, he gave her his note for nine hundred dollars, for that amount of money which she loaned him at that time, and which she had obtained from her father's estate; that each note bore interest at the rate of ten per cent. per annum; that no interest had been paid on the notes until November, 1886, when her husband conveyed to her certain property for the sum of four hundred and fifty dollars, which was credited on the notes; that the amount due her on these notes when the McAllister note in controversy was given was two thousand and sixteen dollars, and that she accepted that note for two thousand dollars, and sixteen dollars, and some cents in money, for the two notes of her husband, which she surrendered to him. She is corroborated in regard to the amount of money which she obtained from her father's estate by evidence which shows that she received a tract of land from that estate valued at a little more than eight hundred dollars, and which she sold, after holding it for something more than one year, for eight hundred and fifty dollars. That sum, and fifty dollars which had been paid to her for one year's use of the land, she states made up the amount she loaned to her husband in the year 1882. Her testimony in regard to

the two loans she made to him, and in regard to the sources from which she obtained the money for that purpose, is not in any manner contradicted, and shows a good and sufficient consideration for the note in controversy. The appellant contends that because of the relationship existing between the garnishee and M. J. Miller, the transaction in question should be closely scrutinized, and attention is called to the fact that some circumstances disclosed by the evidence tend to show that the garnishee has not at all times acted in good faith towards the creditors of her husband, but manifested a disposition to aid him in placing some of his property beyond their reach. Her connection with the Fatherson note is cited as an example of that kind. The evidence in regard to that note was given by her husband, and it is said that her testimony respecting the money she loaned to him shows that she did not give any consideration for the note. She did not testify directly in regard to it, but, conceding that she did not take that note in good faith, it does not follow that she was guilty of any wrong in obtaining the note in suit. There was no connection between the two transactions, and, while it is true that this cause was pending against the husband, and undetermined, and that she probably knew that fact, yet she had a right to secure the payment of her claim, even though she knew that by making payment to her the husband would be, to the amount of the payment, unable to pay other creditors. If her object in getting the note in suit was not to hinder or delay other creditors of her husband, but only to obtain the amount justly due to herself, the transaction was valid, however much it may have hindered the collection of other claims. See *Fowler Co. v. McDonnell*, 100 Iowa, 536; *Sprague v. Benson*, 101 Iowa, 678. The testimony of the garnishee in regard to the loans she made to her husband, in payment of which the McAllister note was

taken, is so direct, reasonable and positive, and so free
from contradiction, that all the presumptions, if any,
which arise from the circumstances alleged to show
fraud, upon which the appellant relies, have been over-
come, and the right of the garnishee to the note in con-
troversy and the proceeds thereof must be regarded as
fully established. This conclusion makes it unneces-
sary to determine other questions discussed, and the
decree of the district court is AFFIRMED.