NELSON BANNING v. JOHN A. PURINTON, and GEORGE D. FOSTER, Appellants.

**Fraudulent Conveyance:** EVIDENCE.   The extent of the grantor's property, and amount of indebtedness, and the nature of his

trouble with plaintiff at the time of the alleged fraudulent conveyance, were not shown. The conveyance, though to grantor's father-in-law, was based on a consideration, part of which went to pay a debt due grantor's wife, part was a note of the wife, and part the price of a lot conveyed by the grantee to the wife. *Held,* to be insufficient to show fraud.

ADVANCES AS CONSIDERATION. An agreement by a child to repay a father an amount advanced by the latter not as a gift but as an advancement is valid.

INSOLVENCY. To entitle a creditor to set aside a conveyance by a debtor as fraudulent he must establish the insolvency of the debtor.

SAME. It is not essential to the right of a creditor to attack a mortgage executed by the debtor, as fraudulent, that the debtor shall have been insolvent at or about the time of the execution of the mortgage if he was insolvent at the time the attack was made upon the conveyance, though the fact of his insolvency at the time of the execution of the mortgage may be relevant to the question of fraud.

Opening of Trial: DISCRETION. It is not an abuse of discretion to refuse to admit additional testimony after the trial has closed and the witnesses departed, where the failure to produce the testimony did not occur through oversight

*Appeal from Jackson District Court.*—HON. C. M. WATERMAN, Judge.

SATURDAY, MAY 21, 1898.

ACTION to foreclose plaintiff's mortgage, executed by John A. and Lydia A. Purinton. The defendant Foster alleged in his answer that he held judgments against John A Purinton which were liens on the mortgaged property, that plaintiff's mortgage was fraudulent, and prayed it be declared inferior to the lien of his judgments. Decree for plaintiff, and defendant Foster appeals.—*Affirmed.*

*Murray & Farr* and *T. W. Darling* for appellant.

*G. L. Johnson, D. A. Wynkoop,* and *A. L. Bartholomew* for appellee.

LADD, J.—This action was begun May 31, 1895, to foreclose a mortgage on the east forty-seven feet of lot 3, in block C, in Preston, Jackson county, executed June 22, 1893, by John A. Purinton and wife to the plaintiff, to secure the payment of a note of one thousand and five hundred dollars. The defendant Foster recovered one judgment against John A. Purinton December 15, 1893, for the sum of two hundred and twenty-nine dollars and fourteen cents and costs, and another on May 21, 1895, for the sum of one thousand and six hundred dollars and costs. While these judgments are subsequent in time to the mortgage, the indebtedness was incurred prior thereto. The amended answer alleges that the real estate covered by plaintiff's mortgage is the only property of Purinton subject to execution, does not exceed in value the amount of the mortgage, and that the mortgage was executed for the purpose of hindering, delaying, and defrauding creditors.

I. The appellant insists that it is not necessary to establish the insolvency of Purinton in order to obtain the relief prayed. If the judgments may be satisfied from other property of the judgment defendant, there is no occasion for interference with the mortgage, or of invoking the intervention of a court of equity. *Gwyer v. Figgins,* 37 Iowa, 517; *Gorden v. Worthley,* 48 Iowa, 429; *Pearson v. Maxfield,* 51 Iowa, 76; *Miller v. Dayton,* 47 Iowa, 312. In these cases deeds were sought to be set aside, but the same rule applies with equal force to a mortgage. The latter may impede the collection of judgments quite as effectually as a deed, and, to obviate this, it is as necessary to set aside the one as the other. The jurisdiction of a court of equity in cases like this cannot be invoked by a creditor until his remedies at law have been exhausted. This rule does not prevail in all the states,

but is in harmony with the weight of authority. See 5 Enc. Pl. & Prac. 465.

II.     Executions were not issued on the judgments, and returned *nulla bona;* and it is said that the evidence does not establish Purinton's insolvency. The only evidence bearing on this issue was that of the judgment defendant. He testified that on June 10, 1893, he owned the real estate in controversy, one of the two lots occupied by him as a homestead, and one thousand and six hundred dollars or one thousand and seven hundred dollars worth of old stock and several hundred dollars in book accounts. The stock and book accounts went into the hands of a receiver appointed to adjust the accounts of the partnership which had existed between Foster and Purinton. All such property was exhausted in satisfying the debts of the firm. He was then asked: "Q. You own your property sought to be foreclosed in this suit? A. Yes sir. Q. You own certain property that went into the hands of the receiver? A. Yes, sir. Q. Do you own any other property? A. No, sir." From this, as the real estate in controversy did not exceed in value the amount due on the mortgage, it appears Purinton had no property subject to execution, and was insolvent. The defense interposed was set up in an amended answer, filed on the day of the trial. We cannot agree with appellee that insolvency must be shown at or about the time the mortgage was executed. Evidence of the pecuniary condition of Purinton, the extent of his property, the part transferred and that retained, was admissible as bearing on the allegation of fraud. But the finding of insolvency at that time was not essential to the maintenance of the action. *Rounds v. Green,* 29 Minn. 139 (12 N. W. Rep. 454); *Hager v. Shindler,* 29 Cal. 48; *Kain v. Larkin* 141 N. Y. 144 (36 N. E. Rep. 9); Wait, Fraudulent Conveyance, section 239; 5 Enc. Pl. & Prac. 566. See *contra, Romine v. Romine,* 59 Ind. 346.

III.   Upon a careful examination of the evidence, we discover nothing indicating an intention to defraud creditors.   Neither the extent of Purinton's property when the mortgage was executed nor the amount of his indebtedness was shown.   Apparently he had more than enough to satisfy all his debts.   The consideration of the mortgage was made up of the following items:  Note of Purinton, three hundred and thirty-nine dollars and fifty-four cents; book account, eighty-three dollars and thirty-four cents; note of Mrs. Purinton, one hundred and ninety-four dollars and eight cents; cost of a lot bought for Mrs. Purinton about nine years previous, with eight per cent. interest, one hundred and seventy-six dollars; seven hundred and seven dollars and four cents in cash.   No question is made but that the first three were justly owing the plaintiff.   The lot cost him one hundred dollars, and was conveyed to Mrs. Purinton.   He did not give it to her, but made an entry of the transaction in his private account, with a view of having the amount paid considered as an advancement in the settlement of his estate.   Under these circumstances, an agreement to repay was not without consideration.

Rather than to have it deemed an advancement, his daughter might prefer payment; and, if so, the contract therefor was valid.   It seems that Mrs. Purinton had acted as bookkeeper of the firm, by virtue of employment by her husband, and there was due her five hundred and forty dollars.   That she performed the services is not questioned.   But it is said that she was paid under an arrangement by which her housekeeper received compensation from the firm in lieu of her services.   The testimony of two witnesses that she so stated is denied by her.   Foster says he did not employ her, but knew she was at work.   He was a silent partner, and it was not a part of his duties to engage

help. Both the Purintons testify to the employment on
the wages claimed. We think the evidence shows Mrs.
Purinton entitled to compensation, and the amount
paid her was not unreasonable. She refused to join
in the execution of the mortgage unless paid the amount
due her. She left the five hundred and forty dollars
received with the bank, taking a certificate of deposit,
with an oral promise for the payment of five per cent.
interest. Afterwards she borrowed one hundred dol-
lars from her father, but this alone does not indicate
bad faith. She explains it by saying that she did not
wish to lose the accrued interest. The one hundred and
sixty-seven dollars and four cents was turned over to
Mrs. Purinton for her husband. An inference of fraud
cannot be based on the mere fact that the debtor bor-
rows money to pay an amount owing his wife, and
secures the payment of valid indebtedness due from
her. If Purinton was having trouble with Foster, as is
claimed, the nature of that trouble is not shown.
Indeed, the record is barren of facts or badges from
which fraud may be inferred.

IV. It appears that on April 23d, after both
parties had concluded the introduction of the evidence,
the court suggested that insolvency had not been
proven. The defendant thereupon insisted this
was unnecessary, and then, after argument,
that the evidence was sufficient on that point,
time was taken to have a portion of it transcribed.
Thereupon the court adjourned till April 28th, when
the defendant moved for permission to introduce evi-
dence of Purinton's insolvency because of oversight.
This motion was overruled. The record does not bear
out the claim that the omission occurred through over-
sight. The defendant's attention was called to the con-
dition of the record while the witnesses were in attend-
ance. These lived at considerable distance from the

county seat, and recalling them would involve extending the term, as it was the last day of the session. Besides, as we have seen, Purinton's insolvency at the time the defense was pleaded had been shown, and the fact of its existence when the mortgage was executed was not essential to recovery. We think the court did not abuse its discretion in overruling the motion. The decree is affirmed.—AFFIRMED.

WATERMAN, J., took no part.