J. C. Hansen, Trustee, Appellant, v. Henry Richter et al.,
Appellees.

No. 38203.

December 13, 1927.

Opinion on Rehearing May 7, 1929.

180

*Tinley, Mitchell, Ross & Mitchell* and *Lower & Sheehan,* for appellant.

*Mayne & Mayne,* for appellees.

KINDIG, J.—On March 4, 1925, the defendant-appellee, Henry Richter, negligently operated his automobile, and thereby seriously injured one Juanita Donahue, who was riding with him at the time. Because of said appellee's carelessness, Juanita Donahue lost an eye, and suffered a dangerous and permanent impairment of her spine. Later, on June 26th, she obtained a judgment in the district court of Douglas County, Nebraska, against the appellee Henry Richter, for $10,000. Subsequently, the appellee Henry Richter, on November 28th, filed a voluntary bankruptcy petition in the district court of the United States for the southern district of Iowa, western division, and accordingly was adjudged a bankrupt. In that proceeding, the plaintiff-appellant was appointed trustee in bankruptcy, and duly qualified as such. Juanita Donahue, aforesaid, filed in the bankruptcy matter her claim growing out of said judgment, and it was duly allowed, in the sum of $9,301.23. The difference between that sum and the original amount is accounted for by the fact that Juanita Donahue previously attached appellee Henry Richter's automobile, and applied the proceeds received therefrom at execution sale in the reduction of the judgment.

It was found by the trustee in bankruptcy that, on or about March 11, 1925, appellee Henry Richter transferred to his wife, the appellee Grace Richter, Lots 12, 13, 14, and 15, in Block 18, Ferry's Addition to the city of Council Bluffs. So, after first being duly authorized by court, the trustee commenced this suit to set aside that conveyance, on the theory that it was without consideration, and for the purpose of hindering, delaying, and defrauding creditors. Upon this claim, evidence was heard in the district court, and trial had thereon. As a result, that tribunal dismissed the suit, so far as it related to Lot 13; because, after the conveyance complained of, the appellee Grace Richter again transferred it to a third party who was not brought into the present action. No complaint is made of the district

court's ruling in that regard. Therefore, we shall give no further consideration to Lot 13.

Furthermore, the trial court held that Lots 14 and 15, above named, were fraudulently transferred by the husband to the wife, for the purpose of avoiding the judgment demands of Juanita Donahue. Hence, that part of the conveyance was canceled and set aside. But it was held that Lot 12 was Henry Richter's homestead, and as such, not subject to execution for the purpose of satisfying creditors' claims. Due to this exemption, the court found that the creditors had no right to complain about the transfer of that lot to the wife; for in no event could there be prejudice, under the circumstances. From this part of the judgment and decree plaintiff-appellant appeals; and from that portion thereof which set aside the conveyance of Lots 14 and 15, the defendants-appellees appeal.

I. Convenience suggests that consideration first be directed to the question concerning the legality of the conveyance from the husband to the wife. That transfer was made by an instrument purporting to be a warranty deed, for an alleged consideration of $2,500. A study of the record discloses the Richters do not contend that the amount named in the deed was in fact the real consideration. Clearness will result if there are eliminated from the controversy two questions which are not involved. First, there was no sale of this real estate from Henry Richter to his wife, Grace; and second, the title was not put in the name of Grace Richter for the purpose of satisfying any debt which was owed her by Henry Richter. Only one reason is given why the conveyance was made. Briefly stated, it was, according to the Richters, because, in the year 1911, the property was originally purchased with the wife's money, although the title at that ancient date was taken in the husband's name. Therefore, to begin with, it is admitted by the appellees that the consideration named in the present deed is fictitious and misleading.

Historically, the facts relied upon by the appellees, Richters, are these: Appellee Grace Richter was married to the appellee Henry Richter on January 30, 1911. Soon thereafter, she asserts, she purchased, for a consideration of $2,800, the four lots before named, but the title thereto was taken in the name of Henry. Satisfactory explanation as to why this was done does not appear, but she says:

"It was agreed between Mr. Richter and myself that he would deed the property to me at any time I asked him, and in the January following, he did execute a deed to me for said property, at my request, and because I wanted to borrow some money on it."

To borrow that money, however, Grace Richter applied to Katherine Hitchcock, the mother of Henry. Neither was a note given nor a receipt taken. Execution of a mortgage was not made; but rather, the realty aforesaid was transferred by warranty deed, by both Grace and Henry, to Mrs. Hitchcock on January 20, 1912. Claim is made that the amount borrowed was $3,500. Just why, in that transaction, Henry could not have deeded directly to his mother, does not appear. Notwithstanding the fact that such would have been the simpler way, a more circuitous procedure was adopted, and, as before said, Henry transferred to his wife, and she, in turn, conveyed to Mrs Hitchcock. Henry's mother thus held the title for some time. Significant at this point is the fact that one C. W. Boyer obtained judgment against Henry Richter and Grace Richter in the district court of Pottawattamie County, July 13, 1912. Thereafter, by a deed dated March 20, 1913, the said Katherine Hitchcock and her husband reconveyed those lots to Henry Richter; but, for some unexplained reason, the deed was not recorded until February 26, 1917.

Grace Richter suggests that, in approximately one year after borrowing the Hitchcock money, she was prepared to repay it, but, because of a personal quarrel, Mrs Hitchcock would not transfer back to her. Resultantly, it seemed more convenient for Grace to pay the money to her husband, Henry, because his mother was willing to put the title in her son's name again. Thus the appellee Grace Richter says it was done. Nevertheless, Henry kept the title until March 11, 1925, which was a period of approximately 12 years. If the property belonged to the wife, and she had a right to have the title put in her name when requested, it is a little strange that, throughout those years and the transactions which took place therein, no demand was made for the retransfer until immediately after March 4, 1925, when Mrs. Donahue received a severe injury because of Henry Richter's negligence, and there was danger that a judgment might be obtained

against him. At the time the four lots were first purchased, the appellees lived in the only house then thereon. Throughout this period, Henry Richter was a furrier. Apparently in 1920 or 1921, the Richters left the Council Bluffs property here in question, and moved to Omaha, Nebraska, where Mrs. Richter ran a rooming house at 1202 Douglas Street. In that rooming house there was, in addition to the rooms occupied by "roomers," an apartment for the Richters, which consisted of a living room, bedrooms, kitchen, etc. They there had their clothing, cooked, ate their meals, and slept.

However, it appears that, during this time, there was a second house built on the Council Bluffs lots, thus making two in all, which were rented to tenants, and, in the year 1923, the Richters also constructed a house on Lot 12, and hence they had three houses on the Council Bluffs lots. Of these, the last named is now claimed as the homestead. Evidently this residence was completed in the fall of the year 1923; yet it is not clear just when the appellees occupied it as a homestead. This homestead proposition will receive consideration later in the opinion.

Whatever may be the fact in reference to that, on March 4, 1925, the appellees, as before said, had three houses and four lots in Council Bluffs, to which the title was in the husband's name. On that day, the Richters invited Mrs. Donahue to ride in their automobile, and while on this trip, the negligence was committed which resulted in said judgment. Mr. and Mrs. Richter were both present, and knew of the accident. Immediately thereafter, Mrs. Donahue was taken to the hospital. While she was there, both Mr. and Mrs. Richter called upon her several times. Concerning these visits, Mrs. Donahue said, on cross-examination:

"Mr. Richter came up first, a few days after the accident. I would say it was about two or three days afterwards. * * * I think it was the 6th of March when Mr. Richter first came to see me. * * * He said he was sorry the accident happened, and told me that he would pay my expenses there at the hospital. He volunteered this. I never stated at any time that I intended to sue him. * * *"

And on direct examination she stated:

"He [appellee Richter] came to the hospital, and he brought the subject to me about the accident, and he said I didn't need to worry about the expenses. * * * 'Now,' he said, 'it won't do you any good to get up and sue me, because I haven't anything.' * * * I talked to him three different times [in the hospital]."

Following this, appellee Richter again visited Mrs. Donahue, concerning which she testified:

"He told me he intended to put his property in his wife's name.

"Q. What did he tell you at that time; what did he say about that? A. He told me so if I proceeded and I would sue him, that I wouldn't get anything.

"Q. Can you remember about when that was? A. It was after the 11th. * * * I told him that I had understood from him that he had put the property in Mrs. Richter's name, and I asked him why he had done that. He said, 'You can never tell what somebody might get in their mind. I feel safer with it out of my name.'"

Likewise, Mrs. Donahue says that Mrs. Richter made similar statements in the hospital to this effect:

"Q. Was it before the 11th of March, 1925? A. Yes, sir, it was. * * * She began to talk about the accident, telling me how sorry she was. * * * She told me she was going to have Mr. Richter put the property in her name. She said: 'If it is in my name, you can't touch it; and Mr. Richter was driving the car, and he did it, and I can't help it if he did.'"

Afterwards, Mrs. Richter called again, and had this conversation with Mrs. Donahue:

"I [Mrs. Donahue] told her [Mrs. Richter] that I had heard they had changed the property from Mr. Richter to her name. I said: 'What was the idea of doing that?' And she said: 'Well, Henry and I talked it over that, if there was any further trouble about this, if it was in my name, you couldn't touch it.'"

Harold and Malcolm Burbridge, sons of Mrs. Donahue, heard this conversation. Continuing on cross-examination, Mrs. Donahue relates:

"She [Mrs. Richter] told me [Mrs. Donahue] that someone had told her I was going to sue them. That is why the conversation came up."

Malcolm Burbridge stated that Mrs. Richter said the transfer was made "to protect themselves from having it taken away from them. * * * As near as I can remember, Mrs. Richter said that Henry Richter changed the property into her name so my mother could not sue them and get all of their property." Corroboration of this may also be found in the testimony of Harold Burbridge.

Mrs. Donahue and the Richters had a conversation concerning the Council Bluffs property in the forenoon before the accident. About this, Mrs. Donahue declared: "Mr. and Mrs. Richter both told me he had property in Council Bluffs."

Henry Richter does not deny that he visited Mrs. Donahue in the hospital, although he does say that the conversation related by her never took place. Moreover, Mrs Richter does not disclaim that she had any such talk with Mrs. Donahue. Manifestly, it is important to note that Mrs. Richter did not tell Mrs. Donahue the Council Bluffs property was not her husband's. Claim was not made in the Omaha hospital by Mrs. Richter that she was the owner. Appellant argues that the same anxiety which caused the immediate transfer from the husband to the wife is responsible for the further alienation of the property thereafter. As soon as Mrs. Richter obtained the title, she mortgaged Lots 14 and 15 aforesaid for $5,500, to the Council Bluffs Building & Loan Association, and transferred Lot 13 to her brother-in-law.

Taxes on the Iowa property were paid by the appellee Richter, and for the purposes of the assessment, he swore that it was his. The telephone was in his name. Such immediate alienation of this property by the wife, under the circumstances, certainly casts suspicion upon the legitimacy of the entire transaction. Some explanation is offered by appellees, in that they say domestic trouble at that time arose, and because thereof, Mrs. Richter demanded the immediate title to the property, which was, in the manner and way aforesaid, being held for her. So, too, it is explained that she had borrowed from her husband $2,500 to build the last house, and that indebtedness was repaid out of the $5,500

loan. Said purported domestic quarrel and the reasons given therefor bear the stamp of incredibility; for it appears that, after the quarrel is said to have taken place, on March 4, 1925, throughout the day Mr. and Mrs. Richter were very friendly, and they certainly have co-operated with each other most harmoniously ever since. All this, as well as many other claims made on the part of these appellees, increases the suspicion that the deed executed by Mr. Richter to Mrs. Richter on March 11, 1925, was without consideration, and made for the purpose of putting the real estate in question beyond the reach of Mrs. Donahue's judgment. In the bankruptcy proceeding, Henry Richter was asked:

"You were the proprietor of Lots 13, 14, and 15, in Block 18, Ferry's Addition to the City of Council Bluffs at that time [March, 1925]?" And he answered: "Yes, sir."

When this property was originally purchased by the Richters, in 1911, title was taken in the name of Henry. Mrs Richter contends that she furnished the money, yet she does not explain where she obtained it; and Henry, while being examined in the bankruptcy court, said he did not know where his wife got that money. Those previous so-called loans and transfers from the husband to the wife and from her to the mother and then back to him again, when compared with the appellee Henry Richter's claim of ownership and the appellee Grace Richter's assent thereto, by both frequently made, rather corroborate appellant's theory that the Council Bluffs houses and lots did in fact belong to Henry, and are (except Lot 12, on which there is a homestead) subject to Mrs. Donahue's judgment. Mr. and Mrs. Richter were very much exercised about the possibility of losing these lots through said judgment. They worried, and right on the eve of the commencement of the Donahue suit, the deed before us was made. Apparently that was not enough; so one lot was given over to the brother-in-law, and the other two were mortgaged heavily. Negotiations for this loan were conducted by both Mr. and Mrs. Richter.

Taking into consideration, as we must, all the claims of ownership made by Mr. Richter, and the suggestions thereof offered by Mrs. Richter, the inevitable conclusion results that the property belonged to him. To this effect, the evidence is clear, satis-

factory, and convincing, and it was so found by the district court when the deed was set aside, so far as it relates to Lots 14 and 15. With that finding we concur. Our conclusion in reference to Lot 12 will be stated in a later division.

II. But appellees urge that appellant is not entitled to the relief granted in reference to Lots 14 and 15 because he did not prove that Henry Richter had no other property out of which  Mrs. Donahue's judgment could be satisfied, at the time he made the aforesaid conveyance to his wife, on March 11, 1925. We have held that said transfer was voluntary and without consideration. Hence, the burden of proof was on the wife to show that her husband, the grantor, had sufficient property remaining to pay his outstanding indebtedness. *Woods v. Allen*, 109 Iowa 484; *Campbell v. Campbell*, 129 Iowa 317; *Long v. Gary Inv. Co.*, 135 Iowa 398.

Notwithstanding that, however, it appears from the testimony of Grace and Henry Richter themselves that this was the only property he had. He directly says that the Council Bluffs lots were the only real estate he owned, and Mrs. Richter suggested that she was having the transfer made because she did not want to lose all they had through the Donahue accident.

III. Furthermore, it is asserted by appellees, appellant cannot succeed because it is shown by the record that, in 1912, one Boyer, as before suggested, obtained a judgment against Henry and Grace Richter. Thereunder, a levy was made on the Council Bluffs lots, resulting in an execution sale thereof to said Boyer. This was in August, 1914, after the property had been conveyed by Mrs Hitchcock and her husband to Henry Richter. Boyer received a sheriff's deed, September 11, 1915. Then, on June 10, 1916, he quitclaimed his interest in the lots to Katherine Hitchcock. Resultantly, it is argued by appellees that the title is still in Mrs. Hitchcock, so far as shown by the record. From this they reason that appellant in no event can obtain any interest in the realty through the appellees.

Apparently the title was sufficiently in them to permit their obtaining a loan for $5,500. Anyway, that issue in reference to the title is not in this controversy. It was not raised in the district court, and is entirely immaterial here. Decision thereon cannot be made unless all the parties in interest are brought be-

fore us. Appellant is claiming now whatever interest the appellees have in and to the real estate, and to that he is entitled. The judgment in the premises can give him no more.

IV. As previously said, the dispute relating to the homestead on Lot 12 will be considered separately. Our attention now is directed to that subject. To reiterate, the appellees in 1923 built a new house on Lot 12. Much dispute appears as to when they occupied it as a home. Notation must here be made of the fact that both appellees voted in Omaha, Nebraska, in the years 1921, 1922, 1923, and 1924. When qualifying for that purpose, they swore that they were residents of Nebraska. During the same period of time, it is evident from the testimony of two police officers that the Richters' rooming house at 1202 Douglas Street was frequently raided, and on some occasions, both husband and wife were taken to the police station. While there, in reply to questions of the officials, they both declared that their home and residence was 1202 Douglas Street, Omaha, Nebraska. Living quarters were provided for this family at the rooming house. Therein they slept, ate, and kept their clothing. Other facts and circumstances are present in the record, indicating that Omaha, Nebraska, and not Council Bluffs, Iowa, was the home of the Richters during that period of time. We are convinced that this husband and wife abandoned their previous homestead in Iowa when, as before told, they lived in Nebraska on this occasion.

About their residence there after the election in November, 1924, the appellee Henry Richter testified, before the referee in bankruptcy, as shown by the transcript, to the following effect:

"Q. How long have you claimed [3416 Avenue C, Council Bluffs] as your residence? A. Since the first of the year. [The examination was had December 14, 1925.] Q. You didn't claim that was your residence along in April, 1925? A. No, sir, I didn't claim it exactly, but I voted in Omaha a year ago. * * * Q. Up until April or May, 1925, you claimed Douglas County, Nebraska, as your home? A. I did. One day, the judge decided I lived in Iowa [that was in the proceeding involving the attachment of appellees' automobile, to partially satisfy the Donahue judgment.] * * * Q. What led you to believe [the judge] made

such a finding? A. When they took my car away from me. Q. You came in and filed an answer in that case [automobile attachment case in Omaha] ? A. Yes, sir. Q. And you said you were a resident of Douglas County? A. Yes, sir. Q. Since May 21, 1925, you filed an affidavit in the case of Juanita Donahue against yourself, as plaintiff, in which you said you were a resident of Douglas County, Nebraska? A. Yes, sir.''

Again, it is shown that, in the attachment proceedings aforesaid, the Richters each filed an affidavit with the clerk of .courts in Omaha, stating that they resided and maintained their home in Nebraska. Out of fairness to the appellees, it should be said that, when examined in the district court on the hearing of the present suit, they both denied making those affidavits. For some reason, the original could not be found, and copies only were produced; but the clerk of courts in Omaha testified that he would not have filed the copies if the original had not accompanied them. And it is to be remembered at this point that Henry Richter testified in the bankruptcy proceedings that he did make such affidavit. Of course, in the present controversy, both the Richters positively state that, as soon as their new home was finished on Lot 12, in the fall of 1923, they moved into it, and from that time forward have occupied it as their home.

Readily it is observed that inconsistencies appear in the attitude and testimony of the appellees. Contradictions are frequent. The exigencies of the occasion apparently determined what was to be said while upon the witness stand. Therefore, little credence, if any, can be given to the statements of either, and only so far as there is corroboration is it safe to adopt their declarations as true. One fact in reference to this homestead has been established beyond contradiction, and that relates to the building of the house on Lot 12. Construction thereof was completed in 1923. Henry Richter says that he and his wife moved therein as soon as they could. They got a little furniture at a time. Mrs. Donahue relates that, on the 4th of March, just before the accident, when she was visiting with Mrs. Richter, the latter told her about the Richter home in Council Bluffs, and how it was furnished, etc. At that time, there was no reason for Mrs. Richter's falsifying to Mrs. Donahue, because they were on friendly relations, and the negligence giving rise to the injury

then had not been committed. Suggestion appears that the Richter car carried an Iowa license for the year 1925. Testimony of the two police officers hereinbefore mentioned indicates that the officials knew little about the Richters during the year 1924. Previous statements made by the appellees to the police officials of Omaha about their residence evidently applied to an earlier date. Appellees' oaths were taken at the registration in 1921. New registration was not required, because appellees did not change precincts. An assessor, Henry Richter says, called at their home, to assess the Council Bluffs property for the year 1925. Obviously he must have been in the Council Bluffs house at that time. A neighbor, Mrs. Grace Elerding, stated:

"I live just a block and a half east of the house where Mr. and Mrs. Richter live. I * * * have known them for seven years. I know when the house where they now live was completed. Mr. and Mrs. Richter moved in since it was completed. They have occupied the house since they moved in. I have seen them frequently. I have been in the house."

Likewise, Edward L. Simons, the grocery and meat man, added:

"My place of business is located at 3308 West Broadway. * * * I know where Mr. and Mrs. Richter live. They have been customers of mine for about three years. [That testimony was given in May or June, 1926.] They have been buying my groceries, meats, and vegetables. They were living at 3416 Avenue C [the present homestead]. I would make deliveries there about three times a week. * * * I have seen them around the house. I called them several times on the phone, and asked them if they wanted anything. The phone was in Mr. Richter's name. They have ordered their groceries both by phone and in person."

Mr. and Mrs. Richter both said that they occupied the Council Bluffs property as a homestead, at least after the election in November, 1924, although they at all times have conducted and still maintain said rooming house in Omaha. Perhaps the appellees voted illegally in Nebraska. Possibly they swore to that which was not true in the Nebraska attachment suit; yet it does seem quite clear, from the testimony of other witnesses, that the house on Lot 12 was occupied as a homestead during the years

1924 and 1925. Prominence should be given to one fact. It is that the house on Lot 12 was built in 1923. Why, if not for a home? The place was never rented or occupied by anyone except the Richters.

Consequently, we are constrained to hold that Lot 12 and the house thereon constituted a homestead during the time in question. Wherefore, Mrs. Donahue, or any other creditor, according to the record, could not appropriate this particular property for the satisfaction of debts, and because thereof, they were not prejudiced by or concerned about its transfer from the husband to the wife.

The judgment and decree of the district court, therefore, is affirmed on both appeals.—*Affirmed on both appeals.*

ALBERT, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.