C. S. ALDRICH et al., Appellees, v. JOHN VAN HEMERT et al., Appellees; TRYNTJE VAN HEMERT, Appellant.

MARCH 6, 1928.

461

*George G. Gaass* and *Mabry & Mabry*, for appellant.

*W. H. Lyon* and *Hays, Hays & Heer*, for appellees.

EVANS, J.—I.   In August, 1920, John Van Hemert bought a farm for a consideration of $63,000, and took the same subject to a mortgage for $48,000, assuming and agreeing to pay the same.   The difference between the mortgage and the purchase price was paid by him.   In 1925, he became in default under this mortgage, and the same was foreclosed, and the farm was sold under execution, leaving a deficiency judgment of $15,000.   In April, 1922, Van Hemert, holding jointly with his wife a mortgage for $25,000, assigned his interest therein to his wife.   This is the transfer which is assailed herein by the plaintiff.   The issue presented is mainly one of fact, and its consideration involves the history of this couple during their married life.   The contention of the defendant was, and is, that the transfer was supported by a full consideration, in that her husband was indebted to her for money received and interest thereon to the full amount of the property transferred.   The decree of the trial court held that the defendant had received from her father and her father's estate approximately $15,000, and that this sum had in large part been delivered to her husband.   It was further held therein, however, that she had received back from her husband the amount of the principal sum, and that the evidence did not justify the allowance of interest thereon.   The husband and wife involved herein are Hollanders, who have resided all their lives in Marion County.   They were married in 1897.   The wife was reared upon her father's farm.   The husband was a hired man on a neighboring farm.   The wife attended no school after she was ten years of age, and never became readily conversant with the English language.   The husband had no means.   He farmed as a renter for several years after his marriage.   Later, they left the farm and moved to town, where the husband opened a butcher shop, in which he continued for a brief time.   Later, the husband and wife engaged in truck gardening upon a small tract of land adjoining the town.   Later, the husband engaged in odd jobs as a carpenter, and more regularly as a janitor of one or two banks.   At the time of their marriage, the wife's father gave her $1,500, which she delivered to her husband, with

462

the understanding, as testified to by both of them, that he was to use the same and to pay 6 per cent interest thereon. In 1902, she received from her father the sum of $2,500, which she used in the same way. In 1906, she received $500 from her father, and in 1910, she received $10,000 in the distribution of her father's estate,—all of which she delivered to her husband, with a like understanding as before. The husband used these funds prudently in various transactions. Property was bought and sold. He usually took the property in his own name, and sold it likewise. Occasionally his wife's name was joined with his in the acquisition of property. No books were kept between the parties. In March, 1920, a farm was sold by the husband for $35,000, in which transaction a mortgage for $25,000 was taken. This mortgage was drawn to both husband and wife, as payees. Before this, the husband had engaged in a transaction of investment jointly with Van Vliet, cashier of the bank for which the husband was janitor. A farm jointly acquired by Van Hemert and Van Vliet was sold, and a mortgage for $25,000, payable to Van Vliet and Van Hemert, was taken in such transaction. In August, 1920, as already stated, Van Hemert, at the solicitation of Van Vliet, bought the farm known in the record as the Aldrich farm, which carried the $48,000 mortgage referred to. In payment of the difference between the mortgage and the purchase price, Van Hemert turned his joint interest in the $25,000 mortgage. At this time, the financial resources of husband and wife consisted of the $25,000 mortgage held jointly by husband and wife, and the later investment by the husband in the Aldrich farm, being approximately $15,000,—approximately a total of $40,000, outside of their homestead. Their homestead was valued at $4,000, and was acquired in 1916, and title taken in the name of the wife. The result of the settlement of the husband and wife in April, 1922, was that the wife owned the mortgage of $25,000, and that the husband owned his investment of $15,000 in the Aldrich farm. In addition, they had their homestead, of the value of $4,000. The occasion for this settlement was that the wife was seriously ill, and despaired of her recovery, and she desired a settlement. She had undergone, or was about to undergo, a serious surgical operation, from the effect of which she had not recovered at the time of the trial. The settlement between husband and wife was on the basis of a

principal sum of $14,500, with 6 per cent interest thereon, which amounted to $12,930. For that amount she received in her own right the $25,000 mortgage. One half of said mortgage had already been acquired by her in 1920. The result of the settlement was simply to give her the other half of the mortgage. The district court held that, prior to this settlement of April, 1922, she had received back her principal in full, and that she was not entitled to recover interest thereon. The items recognized by the court consisted of her half interest in the mortgage, as acquired by her in March, 1920, and the fact that the homestead was in her name. Both husband and wife testified that it was the express understanding that she was to receive interest. Though it be true that such evidence should be scrutinized, yet there appears nothing in the circumstances of this case that would make her claim for interest any more unreasonable than her claim for principal. That she was in fact the creditor of her husband is satisfactorily proven. She had, therefore, the same right as any other creditor to settle with her husband and to take from him a transfer of the property to the full value of her legal right. If she was legally entitled to claim and to take interest upon her principal, then there is no basis left for an attack upon the transfer of the mortgage to her. If it be assumed that the husband was disposing of this mortgage for the purpose of defeating his other creditors, yet her evidence is undisputed that she did not know that he had assumed the $48,000 mortgage. He owed no other debts, in fact. We find no circumstance in the record which tends to show any knowledge on the part of the wife that her husband owed this debt. This being so, the very transaction had between husband and wife in April, 1922, is presumptive evidence of the fairness of the settlement, as between themselves. The petition avers that by such transfer John Van Hemert rendered himself insolvent. No evidence was offered in support of this allegation, except the fact that in 1925 he was insolvent, in that he was unable to pay this mortgage. Whether he was insolvent in April, 1922, would depend upon the value of this farm. No evidence was offered on that subject. It was presumptively worth $63,000 in August, 1920. That its value had greatly depreciated by June, 1925, is manifest from the record. That Van Hemert believed it to be still worth the sum paid for it is indicated by his own conduct

in keeping up his payments thereon. It is not claimed that he had defaulted either in interest or principal before the foreclosure of the mortgage in 1925. If, upon transferring this property to his wife, he had thereafter ceased his payments of principal or interest, it might have been a significant circumstance indicating his belief that he was insolvent. Nothing of that kind transpired. This circumstance is significant of Van Hemert's own confidence in the value of his investment. The result of the settlement between husband and wife amounted to a return to the wife of her original principal, and to an equal division of the surplus earnings of the pair; and this is so even if the wife be charged with $4,000 as the cost of the homestead. Both parties testified that no account was taken of the homestead in the settlement between them. There is a legal sense in which both husband and wife enjoy the beneficial ownership of the homestead, regardless of the name in which the title rests. The plaintiff is in no position to complain of any arrangement made by these parties concerning the homestead in 1916. Both were solvent at that time. Nor has the plaintiff any ground to complain of the acquisition by the wife of a half interest in the $25,-000 mortgage in March, 1920. If the husband had chosen to make an outright gift thereof to his wife, it would have been valid, as against any claim of the plaintiff's. Van Hemert was not at that time indebted to anyone. True, the circumstance is a proper one for consideration in determining whether the wife was, in April, 1922, the creditor of her husband, in a legal sense. But it is a circumstance only, and is clearly insufficient to justify us in overturning the transactions mutually had between them at a time when they had no creditors. We are of opinion that plaintiff has failed to establish any ground for the setting aside of the transfer under attack. For authorities on the general proposition involved, see *Pearson v. Maxfield*, 51 Iowa 76; *Cours v. Hanna*, 34 Iowa 597; *Lloyd v. Bunce*, 41 Iowa 660; *Jones v. Brandt*, 59 Iowa 332; *Campbell v. Campbell*, 129 Iowa 317; *City Bank v. Wright*, 68 Iowa 132; *Sims v. Moore*, 74 Iowa 497; *Crenshaw v. Halvorson*, 183 Iowa 148. There are other features of the record that are not material for our consideration, in view of the conclusion reached.

II. The appellee has filed a motion to dismiss the appeal for want of jurisdiction, on the alleged ground that notice of

appeal was not served by the wife upon the husband; and such motion has been .submitted with the case. It appears that plaintiff's motion was filed on January 10, 1928, together with a second amended abstract in support thereof. The case had been assigned for submission on January 11th, and had been fully argued by the appellant. The motion to dismiss, as well as the supporting abstract, should have been filed not less than ten days before the date set for submission. Section 12885, Code of 1924. The motion must, therefore, be overruled.

For the reasons indicated in the first division hereof, the decree of the district court is—*Reversed.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.