GRACE BARTLETT et al., by their next Friend, G. E. BARTLETT, Appellees, v. ESTELLA B. WEBBER, Appellant.

No. 42336.

FEBRUARY 13, 1934.

REHEARING DENIED SEPTEMBER 18, 1934.

C. J. Lambert, John F. Webber and Bailey C. Webber, for appellant.

Devitt, Eichhorn & Devitt and Arlo W. Palmer, for appellees.

KINTZINGER, J.—On or about March 1, 1932, George E. Bartlett conveyed to his wife, Grace Bartlett, the 200-acre tract of land involved in this litigation. At the time of this conveyance the land

was already subject to a mortgage of some $11,000. This case was originally commenced by Grace Bartlett in September, 1932. At that time she was suffering from a fatal disease from which she died before the case was tried. Before her death she transferred the property in question to her children who, with her husband, were substituted as parties plaintiffs.

On or about May 3, 1932, the defendant, Estella Webber, obtained a judgment against Mr. Bartlett in a foreclosure proceeding on a note and mortgage of $3,500, executed by one Sexton and wife to said Bartlett, which he assigned to Estella Webber, the defendant, on January 10, 1930. In the foreclosure proceedings, the defendant bid in the real estate in that action, consisting of 105 acres for $2,000, leaving a deficiency judgment of $1,905.26. On June 9, 1932, the sheriff, under an execution issued on the deficiency judgment, levied on four lots belonging to Mr. Bartlett in New Sharon, Iowa, and the 200 acres of real estate involved in this litigation. At the sheriff's sale under that execution, the defendant bid in the 200 acres involved in this litigation for $1,905.26, being the amount due on the deficiency judgment.

Defendant alleges that the deed from Mr. Bartlett to his wife was a voluntary conveyance made for the purpose of hindering, delaying, and defrauding his creditors, and without consideration. She further alleges that when she purchased the Sexton note and mortgage on January 10, 1930, Mrs. Bartlett, his wife, knew or should have known of that transaction; and should have known that it was purchased by defendant in reliance upon the personal liability of Mr. Bartlett under his indorsement thereon, and also in reliance upon Mr. Bartlett's ownership of the real estate involved in this litigation. She therefore also alleges that plaintiffs are estopped from claiming any interest in said real estate superior to hers, and asks that plaintiffs' rights be decreed inferior to hers and subject to defendant's sheriff's certificate.

Plaintiffs in replying to defendant's answer allege there was a valuable consideration for the deed from Mr. Bartlett to his wife, and deny that it was made for the purpose of defrauding his creditors; they also deny that Mrs. Bartlett had any knowledge of the transactions between Estella Webber and Mr. Bartlett in relation to the Sexton mortgage in 1930, and deny that she knew that Estella Webber placed any reliance upon her husband's personal

liability under his indorsement of the Sexton note and mortgage, or upon her husband's continued ownership of the property in question.

Pursuant to a contract of sale entered into between the owners of the land and Mr. Bartlett, in December, 1929, he purchased the real estate on January 10, 1930. Before he purchased the land it was heavily mortgaged, and had been sold under foreclosure proceedings. The time for redemption would expire on January 11, 1930, and Mr. Bartlett refinanced the property, and redeemed it from the foreclosure proceedings.

The evidence shows that in January, 1929, Mr. Bartlett's wife received a $2,650 legacy from her mother's estate. Under her mother's will this legacy was to go to her children at her death. This money was invested at 4 per cent interest for a year. When Mr. Bartlett purchased the real estate in question, he used $2,700 of this legacy to help pay for the land in question. On March 1, 1932, Mr. Bartlett conveyed the land to his wife for the purpose of repaying the $2,700 of her legacy used in purchasing the property. At that time the land was encumbered by an $11,000 mortgage executed by Mr. Bartlett when he purchased it in 1930.

Estella Webber, the defendant herein, had no knowledge that Mr. Bartlett had used any of his wife's money in the purchase of this land. When Mr. Bartlett purchased the land in 1930, he secured part of the money used in its purchase by selling the Sexton note and mortgage of $3,500 to the defendant. When she purchased this note and mortgage, she relied upon the personal liability of Mr. Bartlett under his indorsement thereon; and also upon the fact that he was securing title to the real estate in question. The record fails to show that Mrs. Bartlett knew that her husband had received said $3,500 from defendant, or used it in the purchase of said land; it also fails to show that she knew that defendant purchased the Sexton note and mortgage relying upon Mr. Bartlett's personal liability thereon, or in reliance upon his continued ownership of the land.

I. Although the family relationship between the grantor and grantee requires close scrutiny of the evidence in relation to transactions between them, such relationship in and of itself does not establish fraud. It is the rule that transactions between relatives made in good faith and without any actual or constructive fraud on their part are allowed to stand. Clark v. Clark, 209 Iowa 1179, 229 N. W. 816; Erusha v. Wisnewski, 207 Iowa 1187, 224 N. W.

517; Thompson v. Zuckmayer, 94 N. W. 476; Steinfort v. Langhout, 170 Iowa 422, 152 N. W. 612; Mahaska County v. Whitsel, 133 Iowa 335, 110 N. W. 614; Aldrich v. Van Hemert, 205 Iowa 460, 218 N. W. 311.

We have had occasion to discuss this question in the recent case of Pike v. Coon, 217 Iowa 1068, 252 N. W. 888. In that case we adhere to the rule applied in the foregoing cases. In Thompson v. Zuckmayer, supra, we said:

"Transactions between members of a family or others in close confidential relations will be scrutinized closely, but the law gives the relative or friend the same right to protect himself in the collection of a claim, and the same right to purchase property, which is enjoyed by a stranger, and to set aside such a transaction the burden remains upon the party alleging fraud to prove it. It is shown that Albert Zuckmayer was indebted to intervener in quite a large amount, growing out of various dealings between them, and the land conveyed was taken with the burden of a mortgage. We see no good reason for holding that intervener, in receiving the deed, acted fraudulently. He apparently paid full value for the land, and his acts, so far as disclosed by the record, are entirely consistent with good faith on his part."

In the case at bar the land when conveyed to Mrs. Bartlett was already encumbered with a large mortgage. Her husband was indebted to her for $2,700, used in the purchase of the land. It cannot be said that such consideration was inadequate, because defendant bid in the same property, on the execution sale referred to, for $1,905.26.

II. The evidence shows without dispute that the husband owed his wife $2,700 and interest for moneys received by him from her in January, 1929. His wife received this money from her mother's estate under the terms of a will, by which it was to go to her children at her death. The deed conveying this property to his wife was executed March 1, 1932, in consideration for the money Mr. Bartlett received from her. At that time she was suffering from an incurable disease, and he conveyed the property to her for the purpose of having it go to her children in accordance with the terms of her mother's will, in the event of her death.

The fact that the grantor may have been indebted to another creditor would not prevent him from preferring a member of his

own family under the circumstances. It is the settled rule of law in this state that a conveyance from husband to wife, on reasonably adequate consideration, in good faith payment of a bona fide debt, is not fraudulent, even though the husband was insolvent, and even though the conveyance will hinder or prevent the husband's creditors from collecting their claims. Crenshaw v. Halvorson, 183 Iowa 148, 165 N. W. 360; Clark v. Clark, 209 Iowa 1179, 229 N. W. 816; First National Bank v. Eichmeier, 153 Iowa 154, 133 N. W. 454; Muir v. Miller, 103 Iowa 127, 72 N. W. 409; Fowler Co. v. Mc Donnell, 100 Iowa 536, 69 N. W. 873; Sprague v. Benson, 101 Iowa 678, 70 N. W. 731; Mahaska County v. Whitsel, 133 Iowa 335, 110 N. W. 614; Grant v. Cherry, 199 Iowa 164, 201 N. W. 588; Carlisle v. Milliman, 199 Iowa 949, 203 N. W. 268; Cover v. Wyland, 205 Iowa 915, 218 N. W. 915. In Carlisle v. Milliman, supra, we said:

"A debtor, under the law of Iowa, is entitled to prefer any one of his creditors by payment of the debt or by conveying property to him in satisfaction of the debt, even though it be to the disadvantage of other creditors. * * * The wife is certainly entitled to as much consideration as other creditors would be in the securing or payment of debts due from her husband."

For other cases supporting this rule see Poole, Gilliam & Co. v. Seney, 66 Iowa 502, 24 N. W. 27; Keosauqua State Bank v. Hartman, 184 Iowa 961, 169 N. W. 339; State Bank v. Wolford, 178 Iowa 89, 159 N. W. 572; Sprague v. Benson, 101 Iowa 678, 70 N. W. 731; Sims v. Moore, 74 Iowa 497, 38 N. W. 374; City Bank v. Wright, 68 Iowa 132, 26 N. W. 35; Pieter v. Bales, 126 Iowa 170, 101 N. W. 865; Meyer v. Houck, 85 Iowa 319, 52 N. W. 235. There is no presumption of fraud simply because of the family relationship of the parties. The burden is at all times upon the party attacking the conveyance to prove fraud. Crenshaw v. Halvorson, 183 Iowa 148, 165 N. W. 360; Grant v. Cherry, 199 Iowa 164, 201 N. W. 588; Steinfort v. Langhout, 170 Iowa 422, 152 N. W. 612.

III. Another difficulty not overcome by the defendant in this case is that she has failed to prove that the grantor was insolvent at the time the conveyance to his wife was executed.

The general rule is that a court of equity will not interfere to annul a conveyance claimed to be fraudulent as against judgment creditors, unless the insolvency of the debtor is shown by return

of nulla bona or other satisfactory proof. Gwyer v. Figgins, 37 Iowa 517; Pearson v. Maxfield, 51 Iowa 76, 50 N. W. 77; Banning v. Purinton, 105 Iowa 642, 75 N. W. 639; Baxter v. Pritchard, 113 Iowa 422, 85 N. W. 633; Aldrich v. Van Hemert, 205 Iowa 460, 218 N. W. 311; Steckel v. Million, 210 Iowa 1139, 231 N. W. 387; Crenshaw v. Halvorson, 183 Iowa 148, 165 N. W. 360; First National Bank v. Eichmeier, 153 Iowa 154, 133 N. W. 454; Muir v. Miller, 103 Iowa 127, 72 N. W. 409; Fowler Co. v. McDonnell, 100 Iowa 536, 69 N. W. 873; Sprague v. Benson, 101 Iowa 678, 70 N. W. 731; Mahaska County v. Whitsel, 133 Iowa 335, 110 N. W. 614.

In the cases cited by appellant holding it unnecessary to prove the grantor's insolvency, it appears the conveyance was voluntary, fraudulent, and without consideration. Porter v. Wingert, 200 Iowa 1371, 206 N. W. 295; Hansen v. Richter, 208 Iowa 179, 225 N. W. 361; Hansen v. First National Bank, 197 Iowa 1101, 198 N. W. 505.

There are cases to the effect that where the conveyance was voluntary and without consideration the burden of proof rests on the wife to show that her husband had sufficient property remaining to pay his outstanding indebtedness. In Hansen v. Richter, supra, loc. cit. 187, we said:

"Notwithstanding that, however, it appears from the testimony of Grace and Henry Richter themselves that this was the only property he had. He directly says that the Council Bluffs lots were the only real estate he owned and Mrs. Richter suggested that she was having the transfer made because she did not want to lose all they had through the Donahue accident."

The testimony in the case at bar shows that the grantor had other real estate at the time Mr. Bartlett conveyed this property to his wife. When the general execution was issued in June, 1932, Mr. Bartlett had four lots in New Sharon, two of which were occupied by a business building. Although there was no evidence as to the value of this real estate, it must have had some value. Before the defendant was entitled to subject the property conveyed to the grantee, she should first have exhausted her remedy against other property belonging to the grantor. In the case of Steckel v. Million, 210 Iowa 1139, loc. cit. 1143, we said:

"Without Scott's insolvency prejudicing or damaging appel-

lant, there is no actionable fraud, and he cannot complain because appellee obtained the Iowa acreage."

In Banning v. Purinton, 105 Iowa 643, loc. cit. 644, 75 N. W. 639, we said:

"The appellant insists that it is not necessary to establish the insolvency of Purinton in order to obtain the relief prayed. If the judgments may be satisfied from other property of the judgment defendant, there is no occasion for interference with the mortgage, or of invoking the intervention of a court of equity. Gwyer v. Figgins, 37 Iowa 517; Gorden v. Worthley, 48 Iowa 429; Pearson v. Maxfield, 51 Iowa 76, 50 N. W. 77; Miller v. Dayton, 47 Iowa 312. * * * This rule does not prevail in all the states, but is in harmony with the weight of authority."

In the case of Pearson v. Maxfield, 51 Iowa 76, 50 N. W. 77, we said:

"If, at the time of the issuance of the execution, the execution debtor had other property out of which the execution could have been satisfied, the plaintiff should have levied upon such property instead of upon the property in question, which could be effectually reached only through the aid of a court of equity. * * * But no case has gone so far, we think, as to hold that all proof of insolvency can be dispensed with."

In the case of Gwyer v. Figgins & Figgins, 37 Iowa 517, loc. cit. 521, we said:

"Again, the plaintiff has not shown himself entitled to relief in equity even if the conveyance to the appellant was shown to be fraudulent. He has not shown that his remedy is not perfect at law, against George Figgins."

In that case it was held that it is necessary to establish proof of insolvency before the deed attacked could be set aside. As shown in the previous division of this opinion, the evidence in this case fairly showed that the transfer was not voluntary and was made for valuable and adequate consideration. There is no evidence in this case tending to show that George E. Bartlett at the time he executed the deed to his wife was insolvent. On the contrary the evidence shows that he was the owner of four lots in New Sharon,

Iowa, two of which were occupied by business buildings in that town.

The sheriff's return under the general execution made no showing that there was no other property found. As the facts in this case fail to show that the deed was fraudulent or without consideration, we think the burden was upon the defendant to plead and prove the insolvency of the grantor. The evidence has not only fallen short of proving insolvency, but, on the contrary, it shows that the grantor had other property. The evidence was not sufficient to justify any relief against the deed in question.

IV. Some claim is also made by appellant that the plaintiffs are estopped by reason of the grantee's knowledge of her husband's financial condition at the time he endorsed the Sexton note and mortgage to defendant. Without reciting the evidence in detail it is sufficient to say that the evidence does not satisfy us that the grantee had any knowledge that the defendant purchased the Sexton note and mortgage in reliance upon her husband's personal liability thereon, or in reliance upon his ownership of the real estate in question. It is significant to note that after she had commenced her foreclosure proceedings on the $3,500 Sexton mortgage, there was a tentative understanding between her attorney and the grantor's attorney that she take a decree, and the property would be bid in for her at the foreclosure sale, for substantially the amount owing thereon, or just enough less to secure a receivership. Instead of that it was bid in for only $2,000, leaving a deficiency of $1,905.26. The claim of estoppel has not been sustained.

A consideration of any other questions in this case is unnecessary in view of the foregoing conclusion.

From a review of the entire record it is our finding that the defendant has failed to show that the deed was voluntary or fraudulent, or that Mr. Bartlett was insolvent when it was executed.

It is therefore our conclusion that the plaintiffs' title in the property in question should be quieted in them, and that they have judgment against defendant for costs.

For these reasons we believe the judgment of the lower court in quieting plaintiffs' title was right and the same is hereby affirmed.

CLAUSSEN, C. J., and ANDERSON, STEVENS, and MITCHELL, JJ., concur.