## HUNT v. HOOVER AND HOOVER.

| 34 | 77 |
| 99 | 706 |
| 34 | 77 |
| 120 | 34 |

1. Evidence: IMPEACHMENT: ESTOPPEL. Where one of the parties to an action calls the opposite parties as witnesses in his own behalf, he cannot be heard to say that they are unworthy of belief.

2. —— FRAUDULENT CONVEYANCE: FROM FATHER TO SON. A conveyance of real estate by a father to his son in consideration of services performed by the latter for the father several years before, and for which it was, at the time they were rendered, agreed that the son should receive from the father a tract of land of a specified number of acres, is not fraudulent as against creditors.

3. —— INADEQUACY OF PRICE. Nor would the fact that at the time of the conveyance the land, by reason of its increased value since the rendition of the services, was worth considerably more than the amount of the son's wages, affect the validity of the conveyance.

*Appeal from General Term, Sixth Judicial District.*

FRIDAY, MARCH 29.

THE plaintiff, William Hunt, recovered judgment against Jonas Hoover, one of defendants, in the district court of Mahaska county, in October, 1867, upon an indebtedness which accrued in 1865, growing out of a sale of a patent right for which Hunt paid Hoover $3,000, in which sale Hunt claimed he had been defrauded, and recovered judgment against Hoover thereon. James M. and William Hoover are sons of Jonas Hoover. The petition avers that soon after the sale of the patent right to Hunt, Jonas Hoover conveyed to William what was called the "home farm," consisting of one hundred and sixty acres; that he purchased of one Abraham Hawkins a tract of land containing eighty acres, first taking the deed to himself, but in a few days after destroyed the same and procured Hawkins to convey to James M. Hoover. It is alleged that these deeds were made for the purpose of hindering, delaying and defrauding creditors, and especially the plaintiff, in which fraud the defendants William and James M. are charged as having participated. Jonas Hoover is alleged to be insolvent.

The answer is joint, and positively denies all acts of fraud charged and any fraudulent intent on the part of defendants. It admits the conveyance, by Jonas to William, of the "home farm," and to James M. of the Hawkins farm. Avers that the deed to William was a substitute for one made in 1860, that had been lost before recording, and that the conveyance to James was in fulfillment of a contract that had long existed between the father and James. It denies that James or William had any knowledge that their father was indebted to Hunt in any amount. The cause was tried by the court by the first method of equitable

trials, and a decree rendered dismissing plaintiff's petition as to William Hoover, and declaring plaintiff's judgment a lien on the land conveyed to James M., subject to a prior lien of James M., for labor performed by him for his father to the amount of $576. From this decree Jonas and James M. Hoover appealed to the general term, where the judgment of the district court was affirmed, and they now appeal to this court.

*Hendershott & Burton* and *Edward H. Stiles* for the appellants.

*Cutts* and *Morris* for the appellee.

MILLER, J. — The depositions are somewhat voluminous, and we will not attempt any lengthy discussion of the evidence. We have read the evidence with care and to our minds it entirely fails to establish the allegations of fraud in plaintiff's petition. The plaintiff took the testimony of all of the defendants, and, by making them his own witnesses, he cannot be heard to say that they are unworthy of belief. 1 Greenlf. on Ev. 33, 442, 443, and cases cited in notes.

1. EVIDENCE: impeachment: estoppel.

James Hoover testifies, when called on part of defendants, that there was a contract between him and his father that if James would stay on the farm and work and help his father for four years, his father was to give him an improved farm of not less than eighty acres; that he staid and worked at chopping, grubbing, making rails, clearing and tending the land, early and late, and took charge of the business of the farm, frequently working at night burning brush, for the full time agreed upon. The father, William and several other members of the family fully corroborate James' testimony. When he quit his father he was about twenty-five years of age. It was some fifteen years before the old gentleman

2. FRAUDULENT CONVEYANCE: from father to son.

complied with this agreement by causing the Hawkins' farm to be conveyed to him.

The evidence shows conclusively that the conveyance was made by the old man for the purpose of keeping his agreement with his son. It was done before any suit was brought by the plaintiff on the patent-right transaction, and there is no evidence to show that even the old man had any knowledge at the time that plaintiff made any claim upon him, growing out of that transaction, and the evidence is clear and positive that James had no knowledge whatever of the existence of plaintiff's claim at the time he obtained the deed for the farm, or that his father was in any manner indebted. Indeed, the evidence shows the most perfect good faith on the part of all the parties. When Jonas made the purchase of the Hawkins' farm he took a deed therefor to himself (which he would not have done if he had been contemplating a fraud upon plaintiff), the reason for doing so is shown to have been because he did not then know whether his son would like the place. In a few days thereafter the old man became very ill, and continuing to grow worse, and in the expectation that he must soon die, and lest he should do so without fulfilling his agreement with his son, sent for Hawkins, explained the situation to him and procured a conveyance to be made by him to James, of the place, and the first deed was then destroyed, it not having been recorded. Subsequently, when James came to see his father the latter informed him what he had done and that if it suited him he could take the deed, which he did. Now the evidence fails to show that the old man had any other motive in the matter than to carry out, in good faith, his engagement with his son, or that he or his son had, at that time, any knowledge whatever of the plaintiff's claim, or that he was otherwise in debt. It was after the conveyance to James that Hunt first made known to the old man Hoover that he claimed his money back on the patent right trade. Certainly, before

it can be claimed that Jonas intended to defraud a creditor, it must be shown that such creditor existed. Until Hunt made his claim known to Hoover the latter could not know him as a creditor, and if there had been a fraudulent intent on the part of the old man, of which there is no evidence, James had no knowledge, when he received his deed, that Hunt claimed any thing of his father. Of this the evidence leaves no room for doubt.

II. It is urged, however, in argument, that although the conveyance may not have been fraudulent in fact, yet the *3. —— inadequacy of price.* compensation — the farm — was too great for the services rendered. James remained with his father, took the management of the farm, and labored thereon for four years, upon an agreement that he was to have a farm of not less than 80 acres. It is true that no particular farm, or where it was to be, was agreed upon, nor was the contract definite in respect to the character or extent of improvement, and this indefiniteness might prevent enforcement of specific performance. The parties, however, have performed their agreement, and we will not be justified in annulling it, on the ground that a specific performance could not be enforced. Again, the evidence shows that at the time James completed his services for his father, this farm was actually sold for about the sum which would have then been due James upon a *quantum meruit* for his services, and it would be unjust and inequitable to compel him to accept *now* the ordinary wages of a farm hand, earned and due fifteen or sixteen years ago, without interest or increase in any form.

He is equitably entitled to the benefit of his contract as he made it, and, inasmuch as it has been fulfilled and carried out in good faith, he should not be deprived of it.

The conveyance to James was not a voluntary conveyance from father to son. It was upon a valuable consideration, and were the price inadequate, that alone would not be sufficient to vitiate it. Inadequacy of consideration

becomes material only in ascertaining the fraudulent intent. Willard's Eq. Jur., 339. *Gross* inadequacy of price is a badge of fraud, and when coupled with other circumstances tending to prove fraud, may become conclusive. *Boyd* v. *Ellis*, 11 Iowa, 97. In this case we are of opinion that there is no such inadequacy of consideration (if any) as will amount to evidence of fraud, and there are no other circumstances tending to prove it.

The judgment of the district court is reversed, with directions to enter a decree dismissing plaintiff's bill, or appellants will be entitled to such decree in this court if they so elect.

Reversed.