ELMER COX v. JOHN COLLIS and MARY COLLIS, Defendants, CHAS H. MARTIN, Intervener, Appellants, IOWA LOAN & TRUST CO. and GEO. F. HENRY.

**Fraudulent Conveyance:** SUPPORT OF DESERTING WIFE AND HER CHILD: *Consideration.* A conveyance of land by a husband to his divorced wife in consideration of past support of herself and child, procured by her during their separation, she having deserted without sufficient justification, is void as against his creditors.

HUSBAND AND WIFE: *Evidence.* A wife, who had deserted her husband and was living apart from him, loaned him money, without taking any note or other written evidence of such loan. About eleven years later he obtained a divorce, and soon afterwards conveyed land to her with intent to hinder and delay his creditors; but she had no knowledge of such intent, and accepted the conveyance in good faith in payment of the loan. *Held,* that he had the right to give, and she to receive land at its reasonable value, though the chances of other creditors to enforce their demands were thereby lessened.

*Excessive conveyance.* Where the value of land conveyed by a husband to his divorced wife in payment of a loan greatly exceeds the debt, the conveyance is fraudulent as to his creditors, to the extent that the consideration is inadequate, although it was accepted by her in good faith.

PREFERENCES: *Valid second transfer.* The fact that a transfer of a certificate of stock is fraudulent as to creditors will not invalidate a subsequent contract between the debtor and his attorney, who is not a party to the fraud, providing that the transferee shall hold the stock as security for whatever sum is or may become due to the attorney for services in litigation with creditors.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

THURSDAY, OCTOBER 12, 1899.

PLAINTIFF, a judgment creditor of John Collis, brings this action to set aside a conveyance of certain real estate

from John to Mary Collis, and the transfer of certain shares of the capital stock of the Iowa Loan & Trust Company from John Collis to defendant Henry. The ground alleged for setting aside the conveyance and transfer is that they were made without consideration, and to hinder, delay, and defraud the creditors of John Collis, and especially the plaintiff. Plaintiff prays that the said properties may be subject to the payment of his judgment. The defendants John and Mary Collis answered separately, denying the allegations of fraud and want of consideration; and Charles H. Martin, intervener, intervened, claiming to own said shares of stock in trust by transfer for value and without fraud. The Iowa Loan & Trust Company and George F. Henry made no appearance. Decree was rendered in favor of the plaintiff, from which defendants John and Mary Collis and intervener, Martin, appeals.— *Modified and affirmed.*

*Reed & Reed* for appellants John Collis and C. H. Martin.

*Baily & Ballreich* for appellant Mary Collis.

*C. C. & C. L. Nourse* for appellee.

GIVEN, J.—I. John and Mary Collis were married August 27, 1880, in the city of New York, where they resided, and thereafter lived together in that city as husband and wife up to February, 1882. A daughter was born to them in 1881. During the time they lived together they had frequent quarrels, caused in part, at least, by his habit of becoming intoxicated. In February, 1882, they quarreled, whereupon Mrs. Collis took their child and went to the home of her parents, where she has ever since resided apart from her husband, and has maintained herself and child. Soon after their separation, John Collis came to Iowa, and went into business in the city of Des Moines, at his trade as

a plumber. During the years that followed, letters passed between John and Mary at long intervals, of a business character, and he made occasional visits to New York, when Mary met him by appointment, in the street or elsewhere, away from her home. In these interviews there was some slight effort at reconciliation, but no marked desire on the part of either, and especially of Mary, that they live together. John Collis acquired title to the real estate in question, situated in the city of Des Moines, at the following dates, and for the following considerations: Lots 249 and 250, University place, October 10, 1886, for eight hundred dollars; lot 11, block 6, North Oak Park, November 5, 1888, for four hundred dollars; lot 18, division 2, Grimmell's addition, July 16, 1890, for six thousand dollars; and lot 239, Mann's Second addition to Lake Park, December 12, 1891, for seven hundred and fifty dollars. On the 10th day of April, 1894, John Collis obtained a decree of divorce from Mary Collis in the district court of Polk county, Iowa, by a default, on notice by publication, on the grounds of desertion. No provision was made in the decree as to property, alimony, or support. Mary Collis testified that she did not learn of this proceeding until October following. No steps were taken to set aside the decree. On the 22d day of June, 1895, plaintiff, Cox, commenced an action in the district court of Polk county against John Collis to recover damages for having in February, 1895, alienated the affections of his wife; and on the 25th day of January, 1896, he recovered judgment in said action for five thousand dollars, and execution was thereafter returned, "No property found upon which to levy." On the 10th day of April, 1895, John Collis conveyed said real estate to the intervener, Martin, and Martin executed to Collis a quitclaim deed therefor, which latter deed was withheld from record for a time. On the 7th day of August, 1895, John Collis conveyed said real estate to Mary Collis. On the 18th day of April, 1895, John Collis transferred on

the books of the company twenty-five shares of the capital stock of the Iowa Loan & Trust Company, owned by him, of the face value of two thousand five hundred dollars, and of the actual value of about three thousand one hundred and twenty-five dollars, to the defendant Henry. Henry surrendered the certificate for these shares, and received one in his own name, which he indorsed in blank and delivered to Collis, with written authority to receive the dividends. Collis afterwards delivered this certificate to intervener, Martin. Said real estate and shares of stock were all the property that John Collis had. Plaintiff's claim is that said conveyances of the real estate and transfers of the stock were made without consideration, and to hinder, delay, and defraud the creditors of John Collis, and especially this plaintiff. Mary Collis claims that the real estate was conveyed to her for a full and valuable consideration, and without any knowledge on her part of the claim of the plaintiff against John Collis, or of any intention on the part of John to hinder, delay, or defraud his creditors. Intervener, Martin, claims that said certificate of stock was delivered to him as collateral security for certain matters, and that he still holds, and is entitled to hold, it as such.

II. We first inquire as to the conveyances of the real estate. We are in no doubt whatever but that the conveyances from John Collis to Martin and from Martin to Collis were made without consideration, and to hinder, delay, and defraud the creditors of John Collis, and we are equally satisfied that such was the intent and purpose of John Collis in conveying to Mary Collis; but the question remains whether Mary should be charged with knowledge of, and participation in, his fraudulent intent. Mrs. Collis alone testifies to the consideration for the deed to her, and the circumstances under which it was made. Her testimony is in a deposition taken by the defendants, and introduced in evidence by the plaintiff. She testifies that in September, 1883, at a time when John visited

New York, he represented that, if he had a little money, he could do very well in the west, and asked her to loan him some that he knew she had; that she then loaned him two thousand eight hundred and eighty dollars, at six per cent. interest, without taking any note or other written evidence of the loan. This money, she says, she acquired by her own earnings and by a marriage gift of one thousand dollars from her father, and that up to the time she loaned the money she had kept it in currency in a tin box in her home. She next saw John in 1889, and then in July, 1890, at which last time she loaned him two hundred and fifty dollars more, which she had on deposit in a bank. She says that he then told her that he had invested the other money in property in her name, and that the two hundred and fifty dollars would be the same. She further testifies that, after learning about the decree of divorce, she wrote John two letters, calling upon him to straighten matters with her and "to pay the debt he owed me," and that, if he did not, she would go to Des Moines and make trouble for him. In answer to the second letter he wrote that he would come to New York, but did not come until August, 1895,—the time at which he executed to Mary Collis the deed in question. There is much in the statement of Mary Collis as to how she acquired and kept the money, and the circumstances under which the loans were made, to call for close scrutiny, and yet there was nothing in the circumstances to render it impossible that she should have made the loans as claimed. We have her positive and uncontradicted evidence that she made the loans, and the circumstances do not necessarily contradict her, nor warrant us in rejecting her evidence. We conclude from the evidence that there was a bona fide indebtedness from John to Mary Collis on account of these loans amounting to five thousand two hundred and fifty dollars at the time the deed was made, and that it formed a part of the consideration therefor. It is contended on behalf of Mrs. Collis that a further consideration for the deed was the support of herself and child

from the time of the separation. Mrs. Collis had not during all that time asked or needed any support from her husband. She knew of the divorce in October, 1894, and, we may assume from the evidence, knew that no order was made as to property, alimony, or support. She knew that he failed to come and fix matters as he promised in reply to her second letter, written in the fall of 1894. She took no steps to set aside the decree of divorce, nor to ask for alimony or support, but quietly waited until he came in August, 1895. After the separation they acted independently of each other, neither contributing to the accumulations of the other, except as she loaned him money, and neither contributed to a common fund the result of their joint efforts. She had left the home of her husband, we may presume from the decree of divorce, without sufficient cause, and had supported herself and child, as was her duty to do, without asking assistance from him. If it may be said, as contended, that he was under moral obligation to reimburse her for the support she had furnished herself, surely he was not bound to give her his entire property, and to have no share in hers. We are of the opinion that the matter of past support did not form any inducement to, or consideration for, the execution of the deed in question.

III. We are in no doubt but that John Collis executed the deed to Mary to place the property beyond the reach of the plaintiff, but we do not find that she had any knowledge of his fraudulent intention, nor even such as would have suggested inquiry. The situation, as we find it, was that John Collis owed Mary Collis five thousand two hundred and fifty dollars, in payment of which he had a right to give, and she to receive, real estate at its reasonable value, though the chances of his other creditors were thereby lessened to enforce payment. He sold, and she purchased, this real estate, valued according to the lowest estimate at sixteen thousand four hundred dollars, for the actual consideration of five thousand two hundred and fifty

dollars. This was a grossly inadequate consideration, and although the purchase was made by Mrs. Collis in good faith, and without any fraudulent intent, still, as to the creditors of John, it is a fraud, to the extent that the consideration is inadequate; in other words, as to his creditors, she should pay the reasonable value of the property she purchased. She owes to the creditors of John Collis that difference, as a part of the purchase price, and they are entitled to enforce it as a vendor's lien to the extent of their claim, not exceeding the difference. See *Strong v. Lawrence*, 58 Iowa, 56; *Redhead v. Pratt*, 72 Iowa, 100; *Gaar v. Hart*, 77 Iowa, 597; *Fuller v. Griffith*, 91 Iowa, 632; *Harris v. Brink*, 100 Iowa, 366; *Ball v. Phenicie*, 94 Mich. 355 (53 N. W. Rep. 1114).

IV. Intervener's claim is that the certificate for the twenty-five shares of capital stock was delivered to him as security for an existing indebtedness of one hundred and fifty dollars due from John Collis, and for any future indebtedness that might accrue to him or the People's Saving Bank; also, that it was thereafter agreed that he should hold said certificate as security to C. A. Bishop and to W. A. Park for such fees as might become due to them as attorneys for John Collis in the litigation with Elmer Cox. He claims that there is due to him five hundred dollars for responsibility in signing a bond for Collis guarantying the performance of a contract for putting in a steam-heating outfit in a public school house, and for services in procuring a person to complete the contract upon Collis failing to do so. The evidence fails to sustain this claim,—it is too indefinite and unsatisfactory to support it,—and there is no evidence of any indebtedness to the bank. That some amount is due to C. A. Bishop from John Collis for attorney's fees in this litigation is, no doubt, true; but what, it does not appear, as the litigation is not ended. Mr. Park was employed for

Mary Collis alone, and therefore has no claim against John for which the certificate may be held. That the certificate was delivered to, and received by, Martin to hinder, delay, and defraud the plaintiff, we have no doubt; but Bishop, not being a party to the fraud, is entitled, under his agreement with Collis and Martin, to have the certificate charged with whatever sum is or may become due to him for his services as attorney for John Collis in this, and the former litigation with Cox.

Counsel discuss the question whether the plaintiff is entitled to have a lien upon the entire twenty-five shares, or only upon the interest of John Collis therein; reference being made to sections 4379, 4382, and 1628, McClain's Code . In the view we take of the case, it is unnecessary to consider this question. Allowing to Mrs. Collis her debt as already stated, and to C. A. Bishop his attorney's fees, it is manifest that the interest of John Collis in the real estate and in the shares of stock is largely more than sufficient to pay the plaintiff's judgment. The decree of the district court will be so modified as to make the plaintiff's judgment a lien, to the amount thereof, upon the real estate, as for purchase money, to the amount of the difference between its actual value, sixteen thousand four hundred dollars, and the price paid, five thousand two hundred and fifty dollars, and upon the shares of stock, subject to the claim of C. A. Bishop as it may be found to be. The case is remanded for a finding as to the amount due to C. A. Bishop, and for a decree in harmony with this opinion.—MODIFIED AND AFFIRMED.