WILLIAMS SAVINGS BANK, Williams, Iowa, Appellee, v. DENNIS MURPHY, JR., et al., Appellants.

No. 42754.

MARCH 12, 1935.

R. G. Remley, for appellants.

Burnstedt & Hemingway, for appellee.

HAMILTON, J.—In an action brought by the Williams Savings Bank of Williams, Iowa, based upon two promissory notes, the plaintiff on February 27, 1933, obtained a judgment in the district court of Hamilton county, Iowa, against the defendant Dennis Murphy, Jr., in the total amount of $2,644.40 with costs, including attorney's fees, of $88.54.

On March 12, 1932, the defendant Dennis Murphy, Jr., executed to his son, Andrew V. Murphy, his codefendant herein, a deed of conveyance of 120 acres of land situated in said county, described in plaintiff's petition, 40 acres of which constituted his homestead, and at the same time agreed to transfer to said son practically all his personal property, a bill of sale for which was executed on May 13, 1932.

This action was commenced by the plaintiff bank to set aside said conveyance to the 120 acres of land. It is claimed by the plaintiff that said transfer was without consideration and made for the purpose of hindering, delaying and defrauding grantor's creditors, including the plaintiff, and resulted in rendering said grantor insolvent, and plaintiff asks that the transfer of the 120 acres of land be declared fraudulent and void, and set aside and the land subjected to the lien of plaintiff's judgment.

The answer admits that plaintiff was the holder of said judgment and admits the transfer of said property to the son, but denies that the same was without consideration or that the same was for

the purpose of defrauding creditors, and denies insolvency on the part of Dennis Murphy, Jr., and avers that the father was indebted to the son for wages in the amount of $5,200, and that he still had sufficient property remaining subject to execution from which plaintiff could make the amount of its said judgment.

The trial court found for the plaintiff and against the defendants and set aside the conveyance as to the 80 acres other than the homestead, and rendered decree accordingly, from which the defendants have appealed to this court. The decision of the lower court is based on the theory that the deed was a voluntary transfer, and, being between father and son, there were sufficient suspicious circumstances of a fraudulent purpose to cast the burden upon the defendants to show the good faith of the transaction, and that the grantor had sufficient property remaining subject to execution to satisfy his outstanding indebtedness.

The consideration named in the deed was "$1.00 and other valuable consideration." The burden of proof was therefore upon the plaintiff to show "lack or insufficiency of consideration, or that the grantee has acted in bad faith," and this is true "even when the grantor is insolvent." First National Bank of Mason City v. Currier, 218 Iowa 1041, at 1045, 256 N. W. 734, 737.

We have carefully considered the evidence bearing on the question of the claimed indebtedness due from the father to the son for wages and we think it is fairly well established by preponderance of the evidence that when the son arrived at the age of twenty-one years, there was an agreement or understanding between the father and son that if the son would remain on the farm with his father, the father would pay him wages of $50 a month and furnish him spending money. Both the father and son testified to this arrangement, and there is no evidence in the record to refute it. We can see nothing inherent in the arrangement between the son and the father that is strange or unnatural, and there is certainly nothing unjust or inequitable therein as between the father and son.

The son had reached his legal majority and was entitled to the fruits of his toil. The father had no other help and needed his services in the management and operation of his 480 acres of land. What could be more natural than that the father should make some inducements to prevail upon the son to remain with him? The evidence is undisputed that the son was very frugal and unusually faithful to his task as a farm hand. The wages agreed upon were

not excessive in view of the fact that the son spent very little money. He indulged in none of the frivolities common to modern American youth. He seldom left home except to go to church on Sunday; he was never more than 75 miles from home; and there can be no question under the evidence but that he was an honest, thrifty, hardworking, loyal and faithful servant to his father, and he must have been exceedingly busy, there being no evidence in the record that the father was required to resort to other hired help in the operation of his farms. They were farming 320 acres themselves. It is uncontradicted that the prevailing wage for hired help at the time this contract was entered into was $60 a month, and it is a matter of common knowledge that there was no material change in the wages of farm hands for several years thereafter.

At the date of the transfer of the 120 acres of land to the son, he was nearly thirty years of age. He had, therefore, faithfully labored as a hired man under this contract with his father for nearly nine years. No part of his wages had ever been paid to him and there was due and owing to him the sum of $5,200. That this was a valid consideration for the conveyance in question finds ample support in the prior holdings of our court. Hunt v. Hoover, 34 Iowa 77; Farmers & Merchants Bank v. Daiker, 166 Iowa 728, 148 N. W. 1020.

There is but one circumstance which has a tendency to rebut the existence of this indebtedness due the son. It is shown that at the time Dennis Murphy, Jr., borrowed the money from the plaintiff bank in April, 1931, he gave the bank a sworn property state-ment. In this statement there was a blank for setting down "notes payable to relatives." It is claimed by the cashier of the bank that at that time he asked Dennis Murphy whether he owed any *debts* to relatives, and that Murphy said he did not. This is disputed by the defendant, Dennis Murphy. The only explanation he gives for not including in this statement the amount he claimed he was indebted to his son is not very persuasive. He said he did not remember it at the time and denies that the matter was called to his attention by the banker. It will be noticed that on the blank the language used is "notes payable to relatives," and there was no claim that Andrew V. Murphy held a note against his father. The indebtedness was not represented by a note.

We do not think, however, that the circumstance of failing to list this indebtedness on the property statement should be held as

sufficient to overcome the positive testimony of the father and son (see Oelke v. Howey, 210 Iowa 1296, at 1303, 232 N. W. 666), especially in view of the fact that the plaintiff called the father as a witness in its behalf and in a measure thus vouched for the truthfulness of his statements. The record shows that numerous witnesses, including one of the stockholders of the bank, testified that Dennis Murphy, Jr., was a "square shooter" and that his reputation for truth and veracity was good.

In the case of Pike v. Coon, 217 Iowa 1068, 252 N. W. 888, 891, we said:

"Where the plaintiff makes the defendant his own witness, he vouches for his truthfulness, and to ask the court to consider the testimony of his own witness unworthy of belief, in the absence of other evidence to the contrary would violate all rules of evidence."

In the instant case the appellee produced no witnesses to contradict the father and son as to the contract for wages. It depends wholly on what it contends to be the inconsistencies and incongruities found in the testimony to overcome the positive testimony of the defendants in this regard. It is well established that affirmative, wholly uncontradicted and positive testimony of a defendant, even when given on his own behalf, cannot be held to have proven the negative. Pike v. Coon, supra.

Having arrived at the conclusion that there was a valid indebtedness owing from the father to the son in the amount of approximately $5,200, and that $4,600 of this, according to the son's testimony, was the consideration for the conveyance of the 120 acres of land, which takes this conveyance out of the category of what is termed "voluntary conveyances," we next consider the evidence with reference to the question of bad faith or actual fraud and the rules of law applicable thereto under the issues involved in this case.

It should be stated at this point that at the time the deed was made to the son for the 120 acres of land, the father also owned a 200-acre farm, incumbered by a first mortgage of $18,000, and a second mortgage of $5,500, and another farm of 160 acres, incumbered by a mortgage of $10,000.

The fact alone that this was a conveyance between father and son is not a badge of fraud, but is a circumstance to be considered in determining whether or not the conveyance was valid. First National Bank of Mason City v. Currier, 218 Iowa 1041, 256

N. W. 734; Erusha v. Wisnewski, 207 Iowa 1187, 224 N. W. 517; Bartlett v. Webber, 218 Iowa 632, 252 N. W. 892; Crenshaw v. Halvorson, 183 Iowa 148, 165 N. W. 360; Clark v. Clark, 209 Iowa 1179, 229 N. W. 816; Pike v. Coon, 217 Iowa 1068.

In the last-cited case we said:

"The rule in transactions of this nature between members of the same family, one of whom is claimed to be insolvent, or in failing circumstances, will be closely scrutinized, and, if the taint of fraud be found or is fairly to be inferred, they will not be upheld. The grantee under such circumstances is not entitled to be considered a bona fide purchaser. [Central City Savings Bank v. Snyder, 176 N. W. 695]; Ransom v. Lochmiller, 207 Iowa 1315, 224 N. W. 469; Lietz v. Grieme, 212 Iowa 1305, 236 N. W. 395; Webber v. King, 205 Iowa 612, 218 N. W. 282; Howell v. Howell, 211 Iowa 70, 232 N. W. 816."

Fraud is never presumed in a case involving a conveyance of this character, and the burden was on the plaintiff, in order to prove the deed invalid, to show that Dennis Murphy, Jr., was insolvent at the time the deed was executed, that the grantee, Andrew V. Murphy, had knowledge thereof or knowledge of such facts as would put him on his inquiry, and that the deed was executed in contemplation of insolvency; in other words, that the grantee was a party to the fraud which was intended by the grantor. As stated by this court in Ford v. Ott, 182 Iowa 671, at page 679, 164 N. W. 629, 632, in an opinion by Justice Stevens:

"To amount to such fraud as would justify the court in setting aside a conveyance on account thereof, both the grantor and grantee must either have participated therein or the grantee must have possessed such notice as would have put him upon inquiry as to grantor's intention."

"Constructive notice exists where the grantee knew of his grantor's intentions, or of such facts as would put an ordinarily prudent person upon inquiry which if pursued would lead to a knowledge of grantor's purpose. Rosenheim v. Flanders, 114 Iowa 291; Jones v. Hetherington, 45 Iowa 681; Lyons & Dickey v. Hamilton, 69 Iowa 47, 28 N. W. 429. If, however, the purchaser is a creditor in good faith and seeking payment or security for his claim, the conveyance to him will not be fraudulent, even though he knows of other creditors, and that the effect of the debtor's action

will be to defeat them. * * * But he must act in good faith; for if he takes the conveyance for the purpose of aiding in the fraud, it is void."

With these rules in mind, we have carefully considered the evidence in this case, and it is our conclusion that the plaintiff has failed to sustain the burden as to actual fraud.

To establish the evidentiary facts of bad faith, the proof must be clear, satisfactory and convincing. Harvey v. Phillips, 193 Iowa 231, 186 N. W. 910; Steffy v. Schultz, 215 Iowa 837, 246 N. W. 910. Mere ground for suspicion does not make a case in favor of a creditor seeking to subject property conveyed to a third party to execution. Mulvaney v. Buckley, 190 Iowa 1119, 181 N. W. 395. The evidence in such case, to justify the setting aside of a transfer of property at the suit of a creditor, must be clear, satisfactory and convincing. Hawkins v. Ver Meulen, 211 Iowa 1279, at page 1284, 231 N. W. 361.

In the instant case there is no evidence that prior to the execution of the deed, the son, Andrew V. Murphy, had any definite knowledge as to the extent of, or in reference to, his father's indebtedness. He positively denies that he knew anything about his father's debts or that he was in financial difficulty of any kind. The record is wholly barren of any evidence that the creditors of the father were pressing him for payment, or that he was at that time threatened with any litigation. True, he was heavily involved by mortgage indebtedness on two of his farms, but there was no interest in arrears and no delinquent taxes. On the day that the deed was executed there was not a single creditor of Dennis Murphy, Jr., in a position to start suit because of default in the payment of any debt owing by him. The father knew, of course, that the interest on the mortgage of $18,000. held by the Equitable Life Insurance Company on the 200-acre farm would fall due in June, 1932, three months after the conveyance of the 120-acre farm to the son. He knew there would presently be taxes to pay on all of his land. He knew of the low price of farm products which prevailed at that time. He knew also that his son had faithfully stood by him and worked and saved and helped him to accumulate his property and had received no compensation, not even an automobile in his own right, which in these days is considered a necessity by the ordinary young man. He had nothing but the clothes on his back, and the father testified that he bought him a suit only once in two or three

years. That the 200-acre farm was mortgaged for all it was worth was conceded by all the parties. The father testified, however, that he had not made up his mind to give up the 200-acre farm, or to quit paying the interest and taxes thereon until after the Equitable Life Insurance Company in the month of September following had served notice of suit to foreclose their $18,000 mortgage.

It has long been the well-established rule in this state that a debtor may prefer one creditor over another, and this is true, even though the debtor is a member of his own family. Steffy v. Schultz, 215 Iowa 837, 246 N. W. 910. It is likewise well-recognized in this state that a creditor may accept a deed of conveyance as security for debts due him, even though he is aware that the purpose of the debtor in giving it is to injure, delay and defeat, and thus defraud, other creditors. Steffy v. Schultz, supra, and cases therein cited.

There is no showing in this record that at the time the deed in question was made the father had lost hope, or considered himself insolvent and unable to pay his debts. There is no showing that he sought to evade his creditors. The banker testified that he had no trouble in getting him to come to the bank when requested to do so, and at the last interview they had, the evidence shows, the cashier told him if he could not get the money, but could satisfactorily secure the loan, the bank would continue to carry him.

The banker stated that on one of these occasions there was some talk about the nature of the transfer to the boy, and that the father said to him "they were afraid someone was going to get that farm away from them." There isn't any evidence that the words "they" and "them" had reference to the son and the father, or that it referred to the father and the mother. The family consisted of the father and mother and this one son. The father at the time of the transfer of this property was about 59 years of age. The time the last talk took place with the banker was in the fall after the suit had been started by the Equitable Life Insurance Company on its $18,000 mortgage on the 200-acre tract. Whether the statement made to the cashier by the father had reference to the time the deed was made to the son, or whether he was thinking of the conditions that were then apparent, due to the suit by the Equitable Life Insurance Company, is not clearly shown. Be that as it may, there is no evidence in this record of any fraud on the part of the son, or that he did anything more than to accept the deed to the 120 acres of land and the bill of sale to the personal property in satisfaction of

the indebtedness claimed to be due him from his father. This he had a right to do as one of his father's creditors, and he had this right, even though by taking this transfer it resulted in defeating some other creditor.

As said in Carlisle v. Milliman, 199 Iowa 949, 203 N. W. 268, 270:

"A debtor, under the law of Iowa, is entitled to prefer any one of his creditors by payment of the debt or by conveying property to him in satisfaction of the debt, even though it be to the disadvantage of other creditors. * * * The wife is certainly entitled to as much consideration as other creditors would be in the securing or payment of debts due from her husband."

What is here said with reference to the indebtedness due the wife is equally applicable to indebtedness due from the father to the son. As we view the holding of the lower court, it denies to the father this legal right of preference as between creditors and is thus contrary to the prior holdings of this court. Bartlett v. Webber, 218 Iowa 632, 252 N. W. 892, 895.

We do not think it can fairly be said, under the evidence in this case, that the plaintiff has met the burden on the question of actual fraud, by evidence that is clear, satisfactory and convincing.

We next come to the consideration of the question of insolvency of Dennis Murphy, Jr., and in connection therewith the evidence bearing upon the question of the adequacy of the consideration for the 120 acres of land conveyed to the son.

It is admitted, and, we think, fairly established beyond question, that there is no equity in the 200-acre farm. The 160-acre farm was purchased by the defendant, Dennis Murphy, Jr., about 22 years ago. The evidence shows that up to 1931 there was a mortgage of $15,000 upon this 160. In 1931 he paid $5,000 and reduced this indebtedness against the 160 to $10,000. At that time (1931) he obtained a loan from the Northwestern Mutual Life Insurance Company for $10,000. Plaintiff produced witnesses who testified as to the value of the 160 acres. These valuations ranged all the way from $50 to $75 per acre. The same witnesses placed valuations on the 120 acres, taken as a whole, at $10 to $15 an acre above those placed on the 160. This was due to the fact that the 120 had better improvements. In his testimony, the defendant, Dennis Murphy, stated that the lay of the land of the 160 was better than the

120; that the 160 was not as high land and was more level; that the soil of the 160 was deeper, and of better quality and did not wash. The 160 was rented in 1932 for $720 cash.

We are satisfied under the evidence that there is some equity, above the $10,000 mortgage indebtedness, in the 160-acre tract. Whether or not it is sufficient to satisfy the plaintiff's judgment is somewhat doubtful. It would have made a much better record to present to this court if the plaintiff had followed the usual course of getting out an execution on its judgment, and thus ascertained in the way provided by law, the absence of sufficient property to meet the judgment. But this it did not do. It made no effort to do anything except to start its action to set aside the deed to the 120 acres, upon which, in the main action, an attachment had been levied.

In the case of Bartlett v. Webber, 218 Iowa 632, at 636, we said:

"The general rule is that a court of equity will not interfere to annul a conveyance claimed to be fraudulent as against judgment creditors, unless the insolvency of the debtor is shown by return of nulla bona or other satisfactory proof. Gwyer v. Figgins & Figgins, 37 Iowa 517; Pearson v. Maxfield, 51 Iowa 76, 50 N. W. 77; Banning v. Purinton, 105 Iowa 642, 75 N. W. 639; Baxter v. Pritchard, 113 Iowa 422, 85 N. W. 633; Aldrich v. Van Hemert, 205 Iowa 460, 218 N. W. 311; Steckel v. Million, 210 Iowa 1139, 231 N. W. 387; Crenshaw v. Halvorson, 183 Iowa 148, 165 N. W. 360; First National Bank v. Eichmeier, 153 Iowa 154, 133 N. W. 454; Muir v. Miller, 103 Iowa 127, 72 N. W. 409; Fowler Co. v. McDonnell, 100 Iowa 536, 69 N. W. 873; Sprague v. Benson, 101 Iowa 678, 70 N. W. 731; Mahaska County v. Whitsel, 133 Iowa 335, 110 N. W. 614."

The appellee's judgment is a valid and subsisting lien against the 160 acres of land still owned by the judgment debtor, Dennis Murphy, Jr. From all indications, shown by the evidence, he expects to continue to own said 160. He kept the interest and taxes paid and even paid $5,000 on the principal within three years of the date of the trial of the case below. We are constrained to believe, under the facts and circumstances shown by the evidence in this case, that Dennis Murphy, Jr., expects to retain title to the 160-acre farm, and in order to do so, he would, of course, be compelled to pay the appellee's judgment. It is very probable that within a

short time, with the recent increase in value of farm products, there would be sufficient equity in the 160 acres to satisfy the appellee's judgment.

However, the evidence as to insolvency properly related to the date of the execution of the deed of conveyance in question, and at that time the preponderance of the evidence shows that the defendant Dennis Murphy, Jr., was insolvent; that is, the evidence failed to show that he had sufficient remaining property to satisfy all his creditors or to satisfy the appellee's judgment. Under this state of facts, as hereinbefore found, must a court of equity let the conveyance stand, or may the court inquire into the adequacy of the consideration, and if it is found that the value of the property conveyed is in excess of the consideration paid therefor, may such excess be subjected to the payment in whole or in part of the appellee's judgment, leaving the rights of the grantee, Andrew V. Murphy, still fully and adequately protected?

In the case of Citizens Bank of Milo v. Frank, 212 Iowa 707, 235 N. W. 30, 32, which was an action in the nature of a creditor's bill to set aside a transfer of real estate from a judgment debtor to his wife, the court ascertained the value of the real estate conveyed and also the value of the personal property transferred to the wife, and ascertained the amount of the debt due from the husband to the wife, and held the transfer of the real estate to be a mortgage to the wife to secure a certain sum, and that appellee's judgment should be established as a lien against said premises, subject to said amount in favor of the wife. The wife complained because the court credited on the amount of indebtedness due her from her husband the amount of personal property she received, stating that a portion of the personal property was exempt to her husband and hence should not be included in the estimate of values. The appellee in that case, as in the case at bar, was not seeking to set aside the transfer of the personal property, nor to subject any of the personal property in the hands of the wife to the satisfaction of its debt. The undisputed evidence in that case showed that the wife received $4,000 in value of personal property. This court said:

"Whether it was exempt property or not is immaterial to the question at this point. The $4,000 was value which she received on the indebtedness of her husband to her and for which she must give credit whether the property was exempt or not. The trial court

properly charged her with the receipt of $4,000 of property and this was a proper charge in the accounting."

We also said in the similar case of Farmers & Merchants Bank v. Daiker, 166 Iowa 728, at page 743, 148 N. W. 1020, 1025:

"Moreover, there being no showing of express fraud on 'the part of Peter Daiker [grantee], his title could be set aside only upon allowing him as a preferred claim the value of the consideration he had in good faith furnished his parents pursuant to his agreement."

In the case of Cox v. Collis, 109 Iowa 270, 80 N. W. 343, 344, where there was a deed from the husband to the divorced wife, in which the court held the deed was made by the husband for the purpose of defrauding his creditors, it was also held that the wife was free from participation in said fraud, and also free from knowledge of any facts which would put her on inquiry. The court also held that the consideration paid was grossly inadequate. We said:

"This was a grossly inadequate consideration, and although the purchase was made by Mrs. Collis in good faith and without any fraudulent intent, still, as to the creditors of John, it is a fraud, to the extent that the consideration is inadequate; in other words, as to his creditors, she should pay the reasonable value of the property she purchased. She owes to the creditors of John Collis that difference, as a part of the purchase price, and they are entitled to enforce it as a vendor's lien to the extent of their claim, not exceeding the difference."

The lower court in the instant case fixed the value of the 120 acres at $8,000 and the value of the personal property transferred at $3,000, and while the question of values under conditions that prevailed at the time of the trial, in so far as the real estate is concerned, was difficult of accurate proof, and the testimony with reference to the value of the personal property was very unsatisfactory and left the court considerably at sea, we are, nevertheless, satisfied with the findings of the trial court as to values. The value of the property turned over to the son was, therefore, $11,000. The amount due and owing to the son by the father was $5,200, $4,600 of which was given as consideration for the real estate and $600 for the personal property. It is contended by the appellant that the personal property was not conveyed until two months after the deed was

executed, and that, therefore, it should not be considered in connection with the transfer of the real estate. The father, however, testified that while the bill of sale was not executed until the 13th of May, it was all meant for the same arrangement and the same time. Giving the appellants the benefit of their contention and applying the $4,600 against the 120 acres, valued at $8,000, still leaves a difference of $3,400 and under the holdings of our court on numerous occasions this discrepancy in value is sufficient to render the conveyance constructively fraudulent as to creditors of the grantor to the extent of the variance or difference in value of the property conveyed and the price paid by the grantee.

We therefore hold that the grantor, Dennis Murphy, Jr., must be just before he is generous; that the excess of the value of the real estate conveyed above the amount paid by the grantee is equal to or more than the amount of the appellee's judgment; that the 80 acres other than the homestead is therefore subject to the lien of appellee's judgment and this lien subsists from the date of the levy of the attachment, to wit: May 28, 1932, until the same is fully paid; and that the appellee is entitled to special execution to make the amount of said judgment, interest and costs and accruing costs; that in fairness to all concerned, the issuance of said special execution be stayed until six months from the filing of the procedendo in this case with the clerk of the district court of Hamilton county, Iowa; that the defendant, Andrew V. Murphy, at his election may pay or cause to be paid the full amount of appellee's judgment, interest and costs, prior to the date herein fixed for the issuance of said special execution; that in the event of such payment and satisfaction of said judgment, said deed of conveyance as to the entire 120 acres shall be and remain a valid and legal conveyance and vest the title absolutely in the defendant, Andrew V. Murphy, to the said 120 acres of real estate described in plaintiff's petition; and that the costs of this appeal be and the same are hereby taxed one-half to the appellants and one-half to the appellee.

The judgment and decree of the lower court is reversed and remanded with instructions to prepare a decree in accordance with the findings of this court.—Reversed and remanded.

ALBERT, DONEGAN, POWERS, and PARSONS, JJ., concur.

MITCHELL, J., takes no part.