JOHN GOEB, Appellee, v. WILFRED J. BUSH et al., Appellants.

No. 44776.

June 20, 1939.

Herrick & Ary, for appellee.

McCulla & McCulla, for appellants.

HAMILTON, J.—On January 13, 1936, plaintiff obtained a judgment on a promissory note against defendant W. J. Bush in the sum of $1,536.57 plus interest and costs. Original notice, in said suit, was served on W. J. Bush March 7, 1935. Five days later, W. J. Bush and wife, Louise Bush, went to the office of an attorney in Cherokee, Iowa, and had deeds of conveyance prepared, and which were executed and delivered by W. J. Bush to his wife, of all the real estate he owned and a bill of sale to all his personal property, except an old car, and changed his bank account from his name to that of his wife. No money was exchanged or other consideration paid. The deeds recite: "$1 and other valuable consideration." The result of this transaction was to leave the judgment debtor, W. J. Bush, absolutely execution proof.

The property conveyed consisted of a one-fourth interest in a 280-acre farm in Cherokee county, Iowa, on which there was a mortgage of $20,000; 160-acre farm in the same county, which was held under contract, on which there was a balance due of $16,500, 40 acres of this was occupied as a homestead; and three-eighths interest in 160 acres in O'Brien county, Iowa, on which there was a $15,000 mortgage, and personal property valued at $2,400. According to the valuations which the court, in a special finding, placed upon the real estate, the total value of the three farms was $60,600 making a total of $63,000 value obtained by the wife subject to the mortgage indebtedness which totaled $51,500 or an equity of $11,500. There is considerable variance in the testimony as to values but, after carefully reading all the evidence, we do not feel warranted in disturbing the trial court's valuations.

Plaintiff, as is usually the case in this class of actions, was

forced to use and did use both of the defendants as witnesses and according to their statements, which, of course, no one could contradict, the wife, away back in 1915, let her husband have $150, being money she had earned and saved before she was married, and in 1930 she got some money from an insurance company and turned the checks, in the amount of $1,209, over to her husband and, shortly before this action was commenced, she got $150 from her father and turned this over to her husband. The words "turned over" are used advisedly, for this is the language used by the wife when testifying unaided by suggestion. She afterwards said these amounts were loaned under an agreement to repay with interest. There was no evidence as to the rate of interest or time of payment; no notes or other written memoranda were ever made, evidencing the indebtedness. The wife testified also that this indebtedness was all canceled when she received the conveyances, but there was no documentary evidence of this; that, in addition to this, she agreed to pay some small bills, owing by her husband, and a note of $400 at the bank; also interest on the $20,000 mortgage covering the 280-acre farm, and a $1,612.23 payment due on the contract for the 160 acres on which they lived, and taxes. Summed up, by this means, defendants claim a consideration, in canceled antecedent debts all outlawed, except the last $150, of $1,260,—all of which was paid out of the proceeds from the farming operation, still carried on by the husband as the alleged hired man of the wife at a wage, self-appropriated by the husband, of $10 per month plus a few overalls and tobacco,—and promises to pay outstanding debts of the husband of $3,100, or a grand total of $5,260. The trial court, despite the uncontradicted statements of the defendants that there was no intention to defraud anyone and their further testimony as to consideration, found the deeds were fraudulent and without consideration and, with the exception of the homestead 40, set the deeds aside but did not disturb the bill of sale covering the $2,400 worth of personal property.

Appellants complain, quite earnestly, that the trial court erred and that the plaintiff, in placing the defendants on the witness stand, vouched for their truthfulness and cannot disregard their uncontradicted statements.

▆▆▆▆ The rule governing matters of this kind is correctly

stated in the case of Bihlmeier v. Budzine, 201 Iowa 398, 402, 205 N. W. 763, 765, wherein we said:

"The appellee, having tendered him to the court as a witness, vouched for his competency, credibility, and truthfulness. Of course, appellee was entitled to the benefit of any conflict, inconsistency, or incongruity which might be found in Budzine's testimony, and he was not precluded from calling other witnesses to contradict Budzine, if said witnesses could be produced; but Budzine's testimony, except for any inconsistencies or incongruities which there may be therein, stands uncontradicted, and therefore the appellee cannot be heard to claim that he is unworthy of belief."

And, in Pike v. Coon, 217 Iowa 1068, 1074, 252 N. W. 888, 891, we said:

"Where the plaintiff makes the defendant his own witness, he vouches for his truthfulness, and to ask the court to consider the testimony of his own witness unworthy of belief, in the absence of other evidence to the contrary would violate all rules of evidence."

And, in Williams Savings Bank v. Murphy, 219 Iowa 839, 843, 259 N. W. 467, 469, we said:

" * * * the plaintiff called the father as a witness in its behalf and in a measure thus vouched for the truthfulness of his statements."

In the recent case of Brunskill v. Wallace, 224 Iowa 629, 631, 276 N. W. 598, 599, a case quite similar to the instant case, Judge Sager, speaking for the court, made use of the following language:

"Among the propositions urged by defendants is one to the effect that the plaintiffs, having called defendants as witnesses, were bound by the statements made, implying the further thought that the court might not use its judgment and common sense in determining whether the testimony of the defendants was credible or not. The rule of law that one who calls a witness may not impeach him in the ordinary way calls for the citation of no authority in its support. Neither can there be any question that if the testimony appears to be inherently improbable or lacking in credit, or made to appear so by the

testimony of other witnesses, the court is not bound by the language in which the witnesses frame their answers. In any way in which the testimony in the cause before us is viewed there is intruded upon the consciousness the conviction that the transaction was what the court found it to be, and not what the defendants claim it was.''

The rules of law applicable to conveyances between husband and wife or other relatives are well defined and established by the prior decisions of this court and need not be reiterated. See Pike v. Coon, supra; Williams Savings Bank v. Murphy, supra; and Oelke v. Howey, 210 Iowa 1296, 232 N. W. 666.

This court has been extremely liberal, in the consideration of transactions of this character, in protecting a wife who has put her own money into the enterprises of the husband as will be readily seen from an examination of our decisions. However, in all of these cases, where the conveyances have been upheld, the grantee was not connected as a participant in the fraud of the grantor and, in this respect, the cases cited and relied upon by appellants differ from the facts in the instant case. We think the evidence fairly shows that the wife was fully cognizant of all the facts and was as much a participant in the fraudulent transaction as was the husband. She had no money with which to purchase all this property. She had personal knowledge of the threatened judgment; the original notice was in her hands and she read the same. She and her husband talked the matter over and, within five days after the suit was commenced, she went with him to the attorney's office and was present when the deeds were prepared and executed and she took the same to the recorder's office and had them recorded, knowing that thereby she was aiding her husband in divesting himself of all his property, leaving himself absolutely invulnerable to an execution in the hands of his creditors even to the extent of transferring the few dollars he had in the bank in his checking account, all this under the pretense of securing his wife on indebtedness long barred by the statute of limitations and which was evidenced by no writing of any kind. She does not claim that the time of repayment of these alleged loans to her husband or the rate of interest he was to pay was ever agreed upon.

In a separate proceeding wherein the husband was placed on the witness stand and examined prior to the trial of the instant case, his testimony, with reference to the indebtedness owing by him to his wife, is somewhat at variance with his testimony given at the trial. At that time, he appeared to be indulging in guesswork as to the amounts he owed as well as to the purpose underlying the execution of these instruments. The testimony, with reference to the farming operation, after the conveyances were made, indicates very clearly that, in order to make the transaction appear legal, the wife was to assume the management of the farm and her husband was to take the role of a hired man and obtain his wife's consent, in a large measure, in conducting the farming operations.

It is so patently evident that the whole transaction, in which the wife was a participant, was for the purpose of placing the property beyond the reach of the husband's creditors that a court would have to shut his eyes or pretend not to see the bristling symptoms and indications pointing to the true nature of the transaction. Each case must be determined largely on its own peculiar circumstances and in none of the cases cited by appellants do we find, as in the instant case, so many of the well-known badges of fraud present in the transactions and so many elements of proof pointing to the fact that the grantee was cognizant of and a participant in the fraudulent design and purpose of the grantor. In leaving the bill of sale stand, the trial court left sufficient property in the hands of the wife to amply compensate her for all that the husband was able to recall of the alleged indebtedness to his wife, upon his examination previous to the trial of this case. She, also, has title to the homestead property. If we take the court's valuations, there will, in all probability, still be sufficient equity in the real estate, excluding the homestead, to satisfy the claim of the plaintiff and, under the facts and circumstances, as disclosed by this record, we think the decree of the trial court was just and equitable and should not be disturbed.

The case is, accordingly, affirmed.—Affirmed.

MITCHELL, C. J., and SAGER, MILLER, BLISS, RICHARDS, HALE, OLIVER, and STIGER, JJ., concur.