W. G. UTTVITS, Appellee, v. W. C. POLSLEY et al., Appellants.

No. 45515.

Earl C. Fishbaugh, Jr., for appellee.

Keenan, Clovis & Sar, for appellants.

WENNERSTRUM, J.—The plaintiff in his petition alleges substantially as follows:

That he is the holder of a note given by the defendant, W. C. Polsley, dated December 23, 1930, for the principal sum of $1,357.00; that the note is past due and wholly unpaid and that the defendant, W. C. Polsley, has disposed of his property in whole or in part with the intent to defraud his creditors; that Augusta Polsley, mother of W. C. Polsley, had been prior to her death, an heir-at-law of the estates of John R. Hayner and Benjamin F. Hayner, both estates being in process of administration in Page County, Iowa; that the said Augusta Polsley died intestate on April 4, 1938 and that her estate is now in process of administration in said county; that by reason of her death said W. C. Polsley became entitled, as an heir-at-law, to a share in his mother's estate and the two Hayner estates, of which she was an heir; that W. C. Polsley conveyed to his wife, Lottie Polsley, all of his interest in the real estate involved in the three estates; that said conveyance was without consideration and was made and received for the purpose of hindering, delaying and defrauding the creditors of W. C. Polsley, and particularly this plaintiff. Plaintiff prays for judgment against

W. C. Polsley on the note heretofore referred to and asks issuance of a writ of attachment and a levy on the real estate conveyed and referred to in the petition and further prays that on the rendering of the judgment, the equitable jurisdiction of the court be invoked; that said attachment be confirmed and said judgment be decreed to be a lien upon said property senior and paramount to the rights of the defendant, Lottie Polsley, and that the property be sold to satisfy said judgment. The defendants, W. C. Polsley and Lottie Polsley, filed an answer in three divisions, the second of which was disposed of by the sustaining of a demurrer to that portion of the answer and the first of which was dismissed by the defendants. The third division of the answer plead a denial that the conveyance was made for the purpose of hindering, delaying, and defrauding creditors, and further denied' that the transfer was without a valid consideration. The record shows that thereafter W. C. Polsley agreed that plaintiff should take judgment against him on the note, and that the other relief prayed for should be passed upon in the trial of the equitable issues. Judgment was rendered in favor of the plaintiff and against the defendant, W. C. Polsley, on the note sued upon in the amount of $2,685.18. The cause, thereafter, proceeded to trial on the question as to whether or not the conveyance was voluntary, fraudulent and void and the court after submission found that the conveyance by W. C. Polsley to his wife, Lottie Polsley, was made with intent to hinder, delay, and defraud his creditors and particularly the plaintiff, W. G. Uttvits, and that said wife did receive said conveyance with the intent to hinder, delay, and defraud the creditors of W. C. Polsley and particularly the plaintiff, W. G. Uttvits, and that said conveyance was without any consideration and was voluntary, fraudulent, and void.

The defendants have appealed from the decree entered by the trial court.

A review of the evidence is necessary and essential in order to reach a decision as to this controversy. As a part of the testimony it was stipulated that W. C. Polsley at the time of the trial, and on May 4, 1938 (the date of the conveyance by W. C. Polsley to Lottie Polsley, his wife) was insolvent. W. C.

Polsley, the defendant, was called as a witness by the plaintiff and testified in substance as follows:

That he executed the deed of conveyance in controversy; that at the time the deed was executed on May 4, 1938, he had no debts except the note to W. G. Uttvits and a note for $140 he owed his mother's estate; that he was then working for the Henry Field Company at a wage of $16.00 a week; that he worked there until May 22, 1938 and then went to Colorado; that he worked in Colorado until the spring of 1939 and then worked on a farm in Kansas; that he left there in February 1940 and returned to Shenandoah; that he first thought of making this deed to Mrs. Polsley about the middle of April 1938; that he had owed her for some time; that Mrs. Polsley did not ask for this deed and was not present when he signed it. That after the deed was executed he mailed it for recording. He further testified that at the time the deed was made he owed his wife $322.50 without interest; that she let him have $60 in 1908 when they were first married. She had owned a cow and sold it to get that money; that her mother had given her this cow before they were married and she had sold it back to her mother for $60. The mother later gave it back to the daughter. That he asked her for the use of the $60 and said he would pay it back to her when he could; that she asked him a time or two when the $60 was to be paid back but he could not give the dates when she asked him; that she didn't mention it between April 4th and May 4th, 1938.

The next time that his wife gave him any money was in 1915. At that time he received $75, which was also from the sale of a cow. The testimony shows that this was the same cow that the mother had given the daughter in 1908; that this money was used in the general operation of the house and farm; that he asked her if she wanted a note and she said she did not and that she would take his word for it. In 1928 his wife gave him the further sum of $100 which she had received from her mother for finding a purchaser for a piece of land; that he asked her for the use of the $100 and she said he could have it; that a note was not given at that time; that he gave his wife a small amount of money from time to time but that her personal expenses came

from funds received by her personally in raising chickens and garden produce.

That in 1932 his wife sold a cookstove for $27.50 and let him have the money; that her mother had given her the cookstove sometime about 1922 or 1923; that he used the money to buy coal. That in the spring of 1934 his wife let him have $60; that she was keeping roomers in Shenandoah and he supposed the money came from the rent received from roomers; that he wanted to use this $60 and put it in on a truck; that he paid $110 for the truck which he used in hauling mail; that when he quit the mail job he sold the truck for $135 and then bought a 1939 Chevrolet, which he still owns.

The witness further testified that at one time he bought a farm southeast of Coin and paid down some $7,000 or $8,000 on the farm; that he lost it in 1926; that at the time he purchased the farm the wife did not ask him to pay her; that he wanted to convey this property (the property involved in this present litigation) to his wife so it would apply on what he owed her; that it was an understanding all along that he was to pay interest although he had never made any promise to that effect. That he did not talk to his wife before making the deed; that he does not believe he told her until the deed came back, then he told her he fixed it up so she could get the money he owed her; that so far as he knew she had no knowledge of what had been done until the deed came back. That in a conversation with his wife after the deed was returned he did not mention the money owed Mr. Uttvits; that she did not know that he contemplated going to Colorado and did not know of this trip before he left and did not learn where he had gone until a week or so afterwards.

Lottie Polsley, the wife of W. C. Polsley, was also called by the plaintiff and testified in substance as follows:

That she did not remember when she first knew about the deed, whether her husband gave it to her or whether it came through the mail; that when it came it was a complete surprise; that she supposed it was to pay her for what her husband owed her; that she asked him and he said it was to pay for what he owed her; that at that time it was figured up and it was something over $300; that she figured her husband owed her between $500 and $600 in May 1938; that the principal was $322.50 and

the interest would make it between $500 and $600. The witness further testified as to the two transactions relative to the cow received from her mother and its later sale to a stock buyer. She also testified as to the transactions and money received by her and turned over to her husband. In this connection, the witness, Lottie Polsley, later in the trial, produced a check in the amount of $70 made payable to W. C. Polsley, which was the amount she testified that she gave her husband in 1934 rather than the amount of $60 as testified to by the husband. This witness further testified that at the time she accepted the deed from Mr. Polsley, that she had no intention of defrauding Mr. Uttvits; that she did expect the deed to pay her.

The testimony of these two witnesses constitutes the major portion of the testimony introduced by the plaintiff in this action. The only other witness called was W. G. Uttvits, the plaintiff, who testified briefly as to the indebtedness due him from W. C. Polsley.

It will be observed that the only witnesses that the plaintiff presented to the court to substantiate his claim as to a lack of consideration for the conveyance by W. C. Polsley to his wife, and to further bear out his contention that the conveyance was made for the purpose of hindering, delaying, and defrauding the creditors of W. C. Polsley, and particularly the plaintiff, are the two defendants. These two defendants, testifying for the plaintiff, gave testimony, which was uncontradicted, that showed there was a consideration for the conveyance by W. C. Polsley, the husband, to Lottie Polsley, his wife. The consideration to be given to testimony of the adverse party called by the plaintiff has been commented upon by this court on various occasions. See Bihlmeier v. Budzine, 201 Iowa 398, 402, 205 N. W. 763, 765; Pike v. Coon, 217 Iowa 1068, 1074, 252 N. W. 888, 891; Williams Savings Bank v. Murphy, 219 Iowa 839, 843, 259 N. W. 467, 469.

However, we have in the present case a situation that merits careful consideration because of the very nature of the facts and circumstances shown by the testimony of the defendants and upon which they seek to justify the conveyance of the property involved by the husband to his wife.

In 24 Am. Jur. 256, section 105, we find the following statement relative to transactions between husband and wife:

"§105. Nature and Basis of Indebtedness.—Pursuant to the rule that the indebtedness relied upon to sustain a preferential transfer must be a valid and subsisting obligation, a conveyance from a husband to his wife cannot be supported by showing that the husband received moneys from the wife, unless it is also proved that, at the time, the moneys were understood to be lent, and that both husband and wife intended to stand to each other in the relation of debtor and creditor. A mere general understanding that the money so received by him belonged to his wife, and that he considered himself accountable to her for it, is not sufficient to establish the relation of debtor and creditor between husband and wife. If money of the wife has been placed in the husband's hands as a gift, he will not be permitted to give it back to her when he becomes insolvent; a conveyance to accomplish such a purpose is voluntary and fraudulent as to creditors. This is the conclusion where it appears that the husband, with the consent of the wife, used and dealt with his wife's separate property as his own, a gift being presumed from these circumstances. * * *.''

An Iowa authority to this same effect is Carr v. Way, 141 Iowa 245, 249, 119 N. W. 700, 701, which is as follows:

"* * *. Where the wife allows the husband to take and use her property for the support or use of the family or otherwise without an agreement on his part to pay her therefor, the relation of debtor and creditor does not exist, and a conveyance made on account of the use of such property is voluntary and invalid as against other creditors. * * *.''

See also Letz v. Smith, 94 Iowa 301, 302, 303, 62 N. W. 745, 746.

It is quite apparent that the facts in the present case come within the rules as laid down in the authorities above set forth and under those authorities the claimed indebtedness of W. C. Polsley to his wife, Lottie Polsley, cannot be held to be a valid and subsisting obligation.

■ This court is conscious of the fact that the only witnesses who have testified as to this transaction, and the only witnesses called by the plaintiff to substantiate his claim as to the transfer being a fraudulent transaction, are the defendants. However, this court can well give consideration to all the facts and circumstances in connection with the defendants' testimony as bearing upon the consideration that it should give to their statements. In a case somewhat similar to the present one, Sager, J., in Brunskill v. Wallace, 224 Iowa 629, 631, 276 N. W. 598, 599, speaking for this court says:

"* * *. The rule of law that one who calls a witness may not impeach him in the ordinary way calls for the citation of no authority in its support. Neither can there be any question that if the testimony appears to be inherently improbable or lacking in credit, or made to appear so by the testimony of other witnesses, the court is not bound by the language in which the witnesses frame their answers. In any way in which the testimony in the cause before us is viewed there is intruded upon the consciousness the conviction that the transaction was what the court found it to be, and not what the defendants claim it was."

See also Goeb v. Bush, 226 Iowa 1224, 1229, 286 N. W. 492, 494.

■ It is our conclusion that the facts in this case do not justify our sustaining this conveyance as being a voluntary and legitimate one. The unusual character of the claimed transactions between the husband and wife do not appeal to us as meriting such consideration as would justify our upholding the conveyance. The time element is a matter that can be kept in mind. We feel that we are justified in holding, as did the trial court, who had the witnesses before him and to whose judgment we are entitled to give much weight, that the transaction was without consideration, fraudulent and made for the purpose of defrauding the plaintiff in this case. It is therefore our conclusion that the trial court should be and it is affirmed.—Affirmed.

HALE, C. J., and all JUSTICES concur.